MILWAUKEE POLICE ASSOCIATION, Respondent, v. CITY
OF MILWAUKEE, Appellant.

Supreme Court

*No. 77–115. Argued September 11, 1979.—
Decided November 6, 1979.*
(Also reported in 285 N.W.2d 119.)

146

For the appellant the cause was argued by *John F. Kitzke,* assistant city attorney, with whom on the briefs was *James B. Brennan,* city attorney.

For the respondent there was a brief and oral argument by *Kenneth J. Murray* of Milwaukee.

CONNOR T. HANSEN, J.    On February 6, 1976, the Professional Policemen's Protective Association (presently the Milwaukee Police Association) filed a grievance on behalf of Marvin O. Stabbe, a police officer of the Milwaukee police department, against the City of Milwaukee alleging that because of his seniority, his request for transfer within the department should have been favorably recognized. This grievance was denied and the matter went to arbitration.

An arbitration hearing was held on August 5, 1976, pursuant to the contractual arbitration procedure agreed to by the parties, and the following facts appeared in the arbitration award.

Marvin O. Stabbe was hired as a police officer by the City of Milwaukee on October 8, 1951. Initially he was assigned to District Number Two, the station house of

which was approximately three miles from his home, and he served in that district for 11 years, working nights. In October, 1962, he was transferred to District Number Six, which was approximately four-and-one-half miles from his home. Stabbe worked at the district for about 12 years. In the spring of 1974, he was transferred to District Number Seven, which was 15½ miles from his home.

Approximately three weeks after his transfer to District Number Seven, Stabbe wrote to the captain of the district requesting a transfer to District Number Two. Subsequent to that request, Stabbe stopped at the personnel bureau to inquire about his requested transfer. He was informed by a secretary that there were many requests for transfers to District Number Two, but that there were no such requests for District Number One. Stabbe then asked her to change his transfer request form to indicate District Number One.

Subsequently, Stabbe met with Captain Andrew Busalacchi, who was in charge of the personnel bureau of the administrative bureau, and attempted to demonstrate to him the inconvenience, distance, hazard and expense involved in traveling from his home to District Number Seven. The captain stated that he could see no reason why Stabbe's request could not be complied with at the next opening in District Number One. Later two other officers with less seniority than Stabbe were transferred to District Number One.

The Professional Policemen's Protective Association, the exclusive bargaining agent for employees in the Milwaukee Police Department, and the City of Milwaukee entered into a collective bargaining agreement which was effective November 3, 1974, through October 31, 1976. This agreement provided under Part II, C, MANAGEMENT RIGHTS:

"6. The City and Chief of Police shall have the right to transfer employes within the Police Department in a manner most advantageous to the City.

"7. Except as otherwise specifically provided in this Agreement, the City, the Chief of Police and the Fire and Police Commission shall retain all rights and authority to which by law they are entitled."

Section I. A. 1. of Part III, GRIEVANCE AND ARBITRATION PROCEDURE, provided:

"1. Differences involving the interpretation, application or enforcement of the provisions of this Agreement or the application of a rule or regulation of the Chief of Police affecting wages, hours, or conditions of employment and not inconsistent with the 1911 Special Laws of the State of Wisconsin, Chapter 586, and amendments thereto shall constitute a grievance under the provisions set forth below."

The arbitrator held that the question of transfers within the department was grievable and that the request of the grievant was not unreasonable. On October 20, 1976, the arbitrator awarded

". . . that when and if an opening for a police officer develops in District Number One, that Officer Marvin O. Stabbe be given first consideration for transfer to that District; further, that in the event the City does not transfer Officer Stabbe, that he be afforded a Hearing, if he so seeks, to establish the reasons why the transfer is not advantageous to the City."

On March 29, 1977, the grievant Milwaukee Police Association filed a motion in circuit court to confirm the award of the arbitrator. On April 7, 1977, the respondent City of Milwaukee filed a motion to dismiss the action. On June 6, 1977, the circuit court ordered that the award be confirmed and that judgment be entered in favor of grievant.

Judgment was entered on July 21, 1977, providing that when and if an opening for a police officer develops in

District One, that Officer Marvin O. Stabbe be given first consideration for transfer to that district; further that in the event the city does not transfer Officer Stabbe, that he be afforded a hearing, if he so seeks, to establish the reasons why the transfer is not advantageous to the city.

The date of the arbitration award, October 20, 1976, the date of the motion of the Milwaukee Police Association for confirmation of the award, March 29, 1977, and the date the city filed a motion to dismiss the action, April 7, 1977, became important in considering the issues presented by this case, which are:

1. Did the arbitrator exceed his authority under the labor agreement by arbitrating the dispute?

2. Did the arbitrator exceed his authority in making the award?

3. Must the circuit court confirm an arbitration award upon the motion of a party if no motion to vacate or modify is brought under sec. 298.10 or sec. 298.11, Stats., within ninety days?

## *AUTHORITY TO ARBITRATE.*

Appellant contends that there is no provision in the collective bargaining agreement that makes a denial of a request for transfer arbitrable, and therefore the arbitrator was without jurisdiction to arbitrate the dispute.

". . . The arbitrators obtain their authority from the contract, and the task of interpreting the contract to determine whether the dispute is arbitrable and whether the arbitrator has jurisdiction is for a court." *Jt. School District No. 10 v. Jefferson Ed. Asso.,* 78 Wis.2d 94, 101, 253 N.W.2d 536 (1977).

". . . The arbitrator cannot, except by agreement of the parties, be the judge of the scope of his authority under the contract. . . ." *Id.* at 101, 102.

In this case, the collective bargaining agreement is an agreement to submit certain future grievances to arbitration. Part III, Section I. A. 1. of the Agreement states:

"1. Differences involving the interpretation, application or enforcement of the provisions of this Agreement or the application of a rule or regulation of the Chief of Police affecting wages, hours, or conditions of employment and not inconsistent with the 1911 Special Laws of the State of Wisconsin, Chapter 586, and amendments thereto shall constitute a grievance under the provisions set forth below."

The agreement does not expressly or impliedly give the arbitrator the authority to determine the scope of his jurisdiction and make a final and binding decision on the question of arbitrability. Moreover, the parties did not submit the issue of arbitrability for a final and binding decision; the parties submitted the merits of the dispute to the arbitrator, and at the same time the appellant challenged the arbitrability of the transfer question. Therefore, this court may determine the issue of substantive arbitrability—that is, whether Stabbe's grievance was arbitrable within the terms of the collective bargaining agreement.

"When the court determines arbitrability it must exercise great caution. The court has no business weighing the merits of the grievance. It is the arbitrators' decision for which the parties bargained. In *Dehnart v. Waukesha Brewing Co., Inc.*, 17 Wis.2d 44, 115 N.W.2d 490 (1962), this court adopted the *Steelworkers Trilogy* teachings of the court's limited function. The court's function is limited to a determination whether there is a construction of the arbitration clause that would cover the grievance on its face and whether any other provision of the contract specifically excludes it. . . ." *Jt. School District No. 10 v. Jefferson Ed. Asso., supra,* at 111.

In *Jt. School District No. 10 v. Jefferson Ed. Asso.,* *supra,* this court held that, although the *Steelworkers Cases* involved broad arbitration clauses submitting questions of contract interpretation to the arbitrator and the contract in the case before the court contained a narrow arbitration clause, the fundamental pronouncements on the issue of arbitrability as set forth in the *Steelworkers Trilogy* were applicable to that case.

The present case involves a broad arbitration clause, providing for arbitration of any differences arising between the parties as to the interpretation, application or enforcement of the provisions of the agreement. Therefore the grievance alleged in this case is subject to arbitration because, as stated in the *Steelworkers Cases:*

"An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 583 (1960).

The provisions in the collective bargaining agreement to which appellant refers in order to support its contention that the matter of transfers is not arbitrable appear in Part II of the Agreement under Section C, MANAGEMENT RIGHTS, and state as follows:

"6. The City and the Chief of Police shall have the right to transfer employes within the Police Department in a manner most advantageous to the City.
"7. Except as otherwise specifically provided in this Agreement, the City, the Chief of Police and the Fire and Police Commission shall retain all rights and authority to which by law they are entitled."

But respondent contends that it is precisely that provision granting the city and chief of police the right to transfer

employees "in a manner most advantageous to the City" which gave the arbitrator the authority to arbitrate the dispute.

Appellant argues that subsections 6 and 7 quoted above specifically acknowledge the statutory authority of the chief to transfer. Respondent, on the other hand, argues that the chief of police and the city improperly interpreted and applied section 6 when the chief refused to grant grievant's request for a transfer. The arguments of both parties center around the interpretation to be given to subsection 6 of Part II, C of the Agreement. Thus, a "difference involving the interpretation" of the Agreement has arisen. The arbitration clause, therefore, covers the grievance on its face and there is no other provision of the contract which specifically excludes it. *Jt. School District No. 10 v. Jefferson Ed. Asso., supra.*

*AUTHORITY TO MAKE THE AWARD.*

Appellant contends that the arbitrator exceeded his authority in awarding that Officer Stabbe be given first consideration for transfer to District One.

This court has repeatedly held that it has a "hands off" attitude toward arbitrators' decisions. *WERC v. Teamsters Local No. 563,* 75 Wis.2d 602, 611, 250 N.W.2d 696 (1977) ; *Milw. Pro. Firefighters, Local 215 v. Milwaukee,* 78 Wis.2d 1, 21, 22, 253 N.W.2d 481 (1977) ; *Jt. School District No. 10 v. Jefferson Ed. Asso., supra,* at 117.

" 'Judicial review of arbitration awards is very limited. The strong policy favoring arbitration as a method for settling disputes under collective bargaining agreements requires a reluctance on the part of the courts to interfere with the arbitrator's award upon issues

properly submitted . . . Thus the function of the court upon review of an arbitration award is a supervisory one, the goal being to insure that the parties receive the arbitration they bargained for.' *Milwaukee Professional Firefighters v. Milwaukee, supra.*

"The decision of an arbitrator cannot be interfered with for mere errors of judgment as to law or fact. Courts will overturn an arbitrator's award if there is perverse misconstruction or if there is positive misconduct plainly established, or if there is manifest disregard of the law, or if the award itself is illegal or violates strong public policy." *Jt. School District No. 10 v. Jefferson Ed. Asso., supra,* at 117, 118.

Before the arbitrator, appellant contended that subsection 6 of Part II, C, MANAGEMENT RIGHTS, of the collective bargaining agreement gave the chief of police the sole right to decide when and where transfers are to be made. Appellant also argued that the Milwaukee City Charter gives the police chief so broad a mandate in regard to matters relating to refusal to transfer that such refusals do not constitute a grievance.

Sec. 1, Chapter 586, Laws of 1911, (formerly section 959–46d. 23 of the statutes, and presently 62.50(23), Stats.) provides:

"The chief engineer of the fire department and the chief of police of said cities, shall be the head of their respective departments and shall have power to regulate said departments and prescribe rules for the government of its members. The chief of police shall cause the public peace to be prescribed and see that all laws and ordinances of the city are enforced. He shall be responsible for the efficiency and general good conduct of the department under his control. Each of said chiefs shall have the custody and control of all public property pertaining to said departments and everything connected therewith and belonging thereto. They shall have the custody and control of all books, records, machines, tools, implements, and apparatus of every kind whatsoever necessary for use in each of said departments."

Various provisions of the collective bargaining agreement, in addition to subsections 6 and 7 of Part II, C, MANAGEMENT RIGHTS, and the arbitration clause in section I. A. 1. of Part III, GRIEVANCE AND ARBITRATION PROCEDURE, recognize the power of the chief of police to manage and direct the operation of the police department and give deference to his authority conferred by Chapter 586, Laws of 1911 and the amendments thereto. These provisions are:

"WHEREAS, it is intended that the following Agreement shall be an implementation of the provisions of Section 111.70, Wisconsin Statutes, consistent with the legislative authority which devolves upon the Common Council of the City of Milwaukee, the Special Laws of the State of Wisconsin, Chapter 586 of the Laws of 1911 and amendments thereto, relating to the Chief of Police and the Board of Fire and Police Commissioners, the municipal budget law, Chapter 65, Wisconsin Statutes, 1971, and other statutes and laws applicable to the City of Milwaukee; and

"WHEREAS, it is intended by the provisions of this Agreement that there be no abrogation of the duties, obligations, or responsibilities of any agency or department of City government which is now expressly provided for respectively either by: state statutes, charter ordinances and ordinances of the City of Milwaukee except as expressly limited herein; . . .

". . . .

"PART I

". . . .

"H. *SUBJECT TO CHARTER*

"In the event that the provisions of this Agreement or application of this Agreement conflicts with the legislative authority which devolves upon the Common Council of the City of Milwaukee as more fully set forth in the provisions of the Milwaukee City Charter, the Special Laws of the State of Wisconsin, Chapter 586 of the Laws of 1911 and amendments thereto pertaining to the powers, functions, duties and responsibilities of the Chief of Police and the Board of Fire and Police Commissioners or the municipal budget law, Chapter

65, Wisconsin Statutes, 1971, or other applicable laws or statutes, this Agreement shall be subject to such provisions.

"PART II

" . . . .

"C. *MANAGEMENT RIGHTS*

"1. The Association recognizes the right of the City and the Chief of Police to operate and manage their affairs in all respects in accordance with the laws of Wisconsin, ordinances of the City, Constitution of the United States and Section 111.70 of the Wisconsin Statutes. The Association recognizes the exclusive right of the Chief of Police to establish and maintain departmental rules and procedures for the administration of Police Department during the term of this Agreement provided that such rules and procedures do not violate any of the provisions of this Agreement.

" . . . .

"11. The Association pledges cooperation to the increasing of departmental efficiency and effectiveness. Any and all rights concerning the management and direction of the Police Department and the police force shall be exclusively the right of the City and the Chief of Police unless otherwise provided by the terms of this Agreement as permitted by law.

" . . . .

"PART III
"II. *GRIEVANCE ARBITRATION*

" . . . .

"F. In reviewing any difference over application of a departmental rule or regulation under this grievance and arbitration procedure the arbitrator shall take into account the special statutory responsibilities granted to the Chief of Police under the 1911 Special Laws of the State of Wisconsin, Chapter 586, and amendments thereto. The arbitrator shall not impair the ability of the Chief of Police to operate the department in accordance with the statutory responsibilities under the Special Laws of the State of Wisconsin, Chapter 586 of the Laws of 1911 and amendments thereto nor shall he impair the authority of the Chief of Police to maintain, establish and modify rules and regulations for the operation of the Police Department, provided such rules and regulations are not in violation of the specific provisions of this

Agreement. In addition the arbitrator shall not prohibit the Chief of Police from executing departmental rules and regulations in a fair and equitable manner.

"  . . . .

"PART V

"A. *AID TO CONSTRUCTION OF PROVISIONS OF AGREEMENT*

"  . . . .

"2. The Association recognizes the powers, duties, and responsibilities of the Chief of Police as set forth in Chapter 586, Session Laws of 1911 and that pursuant thereto the Chief of Police and not the Common Council of the City of Milwaukee has the authority to establish rules and regulations applicable to the operation of the Police Department and to the conduct of the police officers employed therein."

The arbitrator acknowledged that the chief's right to transfer employees in a manner most advantageous to the city would seem to place the subject of transfers in a non-grievable category. He further recognized that Chapter 586 of the Laws of 1911 was incorporated in the collective bargaining agreement and gives the chief powers not normally enjoyed by other governmental department heads. The arbitrator even declared that "both the explicit terms of the contract and the state law incorporated therein seem to give the chief unbridled transfer power." However, the arbitrator discussed *Confederation of Police v. City of Chicago,* 529 F.2d 89 (7th Cir. 1976),[1] The arbitrator stated that in his opinion the *City of Chicago Case* ruled that matters concerning adverse transfers are grievable, therefore, in order to be consistent, matters concerning requested transfers should be grievable. Thus, he found that the union's prayer for relief was reasonable. He declared:

---

[1] Actually the decision in the *City of Chicago Case* had been vacated by the United States Supreme Court, *Confederation of Police v. City of Chicago,* 427 U.S. 902 (1976) and was subsequently reversed in *Confederation of Police v. City of Chicago,* 547 F.2d 375 (7th Cir. 1977).

"In view of the unanimous feeling of the parties, and in view of the recent Federal Court decision in our Circuit which seems to eliminate possible constraints of the Contract, I can freely rule that the request of the Grievant is not unreasonable."

Finally, the arbitrator directed that when and if an opening for a police officer develops in District Number One, Stabbe be given the first consideration for transfer to that district; and if the city does not transfer him, that he be given the right to a hearing to establish why the transfer is not advantageous to the city.

We believe that the arbitrator had no authority to direct that Stabbe be given the next assignment in District One, since both the statutes and the collective bargaining agreement vest authority in the chief of police to make decisions concerning transfers.

"An arbitrator obtains his authority from the contract of the parties. *Wisconsin Employment Relations Board v. Teamsters Local No. 563,* 75 Wis.2d 602, 611, 250 N.W.2d 696 (1977). The function of the arbitrator in disputes under a collective bargaining agreement is to interpret and apply the agreement. Elkouri & Elkouri, *How Arbitration Works* 296 (1976).

" '[A]n arbitrator is confined to the interpretation of the collective bargaining agreement; he does not sit to dispense his own brand of justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to his obligation, courts have no choice but to refuse enforcement of the award.' *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960)." *Milw. Pro. Firefighters, Local 215 v. Milwaukee, supra,* at 21.

The direction that Stabbe be given first consideration for transfer to District Number One or be afforded the right to a hearing if he is not transferred, does not draw its essence from the contract. The arbitrator was

authorized to resolve only questions of contractual rights, and thus, the question before him was whether the contract required that Stabbe be given first consideration for transfer. Although he did direct that Stabbe be given first consideration, it is very clear from his decision that he did not do so because the agreement, as he interpreted it, required such a remedy. Rather, this direction by the arbitrator was based upon his understanding of the feeling of the parties and upon a federal circuit case which had been vacated at the time of his decision and which he interpreted "to eliminate possible constraints of the Contract." The arbitrator ignored numerous provisions in the agreement giving deference to the authority and responsibilities placed upon the chief of police by Chapter 586, Laws of 1911, and, in particular, subsection F of Part III, section II, GRIEVANCE ARBITRATION, which provides in part:

". . . The arbitrator shall not impair the ability of the Chief of Police to operate the department in accordance with the statutory responsibilities under the Special Laws of the State of Wisconsin, Chapter 586, of the Laws of 1911 and amendments thereto. . . ."

Furthermore, by directing that Stabbe be given first consideration for transfer, at the same time that he failed to find that the agreement required that Stabbe be given first consideration, the arbitrator has added to the labor agreement a provision compelling employee transfers. This is contrary to subsection D of Part III, section II providing that "The arbitrator shall neither add to, detract from, nor modify the language of the Agreement. . . ."

This case is similar to *Milw. Pro. Firefighters, Local 215, v. Milwaukee, supra,* in which the union challenged certain orders issued by the fire chief calling for implementation of new rules regarding the scheduling of overtime work, vacation days and off days for the fire-

fighters for the upcoming two years. The arbitrator found in favor of the union and his award, among other things, required that scheduling be conducted in the same manner that it had been prior to the issuance of the orders. On appeal, the city contended that the arbitrator exceeded his powers by disregarding the collective bargaining agreement. This court stated that the arbitrator was authorized to resolve only questions of contractual rights and so the question before him was whether the contract required that past practice be maintained. This court held that the circuit court erred in confirming the part of the award which directed the maintenance of past practice, since it was clear from the arbitrator's decision that he did not give such a direction because the agreement, as he interpreted it, required maintenance of past practice. Instead, his decision showed that his direction was based upon his understanding of the wishes of the parties. This court stated at page 25 of its decision:

". . . Although arbitrators are to be afforded flexibility and latitude in formulating remedies, the arbitrator here has not confined himself to the agreement, as he is required, and thus has denied the appellants the arbitration they bargained for. Since this aspect of the award has not drawn its essence from the collective bargaining agreement, the arbitrator exceeded his power in respect thereto."

In the case before us we conclude the arbitrator exceeded his power and contract authority. Therefore the circuit court erred in confirming the award.

### APPLICATION OF SEC. 298.09, STATS., TO A MOTION TO CONFIRM AN AWARD.

The collective bargaining agreement between the parties specifically incorporated secs. 298.08 through 298.15, Stats. Sec. 298.09, 298.10, 298.11 and 298.13 provides:

"298.09 **Court confirmation award, time limit.** At any time within one year after the award is made any party to the arbitration may apply to the court in and for the county within which such award was made for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected as prescribed in the next two sections. Notice in writing of the application shall be served upon the adverse party or his attorney 5 days before the hearing thereof.

"298.10 **Vacation of award, rehearing by arbitrators.** (1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

"(a) Where the award was procured by corruption, fraud or undue means;

"(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(2) Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

"298.11 **Modification of award.** (1) In either of the following cases the court in and for the county wherein the award was made must make an order modifying or correcting the award upon the application of any party to the arbitration:

"(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award;

"(b) Where the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted;

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"(2) The order must modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

"298.13 **Notice of motion to change award.** Notice of a motion to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered, as prescribed by law for service of notice of a motion in an action. For the purposes of the motion any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award."

In the case before us the city appellant and adverse party did not move to vacate, modify or correct the award within three months after the award as provided in sec. 298.13, Stats. Rather, the respondent Stabbe moved to confirm the arbitration award after the expiration of three months but within one year from the date of the award. The appellant responded to the motion to confirm by moving to have the award dismissed. One of the reasons advanced for the motion of the appellant was that the arbitrator exceeded his authority. Sec. 298.10 (1) (d). For the purposes of this opinion we consider the motion to dismiss tantamount to a motion to vacate.

The respondent contends that because the appellant did not bring a motion to vacate within three months of the date of the award as provided in sec. 298.13, it is foreclosed from responding to the respondent's timely motion to confirm. Thus, argues the respondent, the circuit court is left with no alternative but to confirm

the award regardless of the merits of the position of the adverse party.

The appellant on the other hand argues that regardless of the three-month limitation in sec. 298.13, Stats., if a party chooses to timely move for confirmation of an award under sec. 298.09, the adverse party can respond by moving to vacate the award upon grounds set forth in sec. 298.10 or modify or correct the award upon grounds set forth in sec. 298.11. The appellant contends that any contrary application of the statutes would result, on occasion, in the circuit court being required to enter judgment confirming an award patently made contrary to the provisions of secs. 298.10 or 298.11.

This issue has not heretofore been presented for resolution in this state. However, we find that secs. 298.09, 298.10, 298.11 and 298.13, Stats., and 9 U.S.C. secs. 9, 10, 11 and 12, are substantially identical. These provisions of the federal code have been interpreted and applied by the federal courts.

In *Riko Enterprises, Inc. v. Seattle Supersonics Corp.*, 357 F. Supp. 521 (S.D.N.Y. 1973), like the case at bar, the conditions of the award had not been met, three months had expired and the petitioner moved the court for an order confirming the arbitration award pursuant to 9 U.S.C. sec. 9. In response to that motion, respondent moved to vacate the award. The petitioner objected to the motion of the respondent on the ground that it was barred by 9 U.S.C. sec. 12, because more than three months had elapsed since the arbitrator had made the award. The court held that if respondent's motion were an independent motion to vacate, then the court would agree the motion was barred by sec. 12. However, the court held that by filing the application for confirmation, petitioner provided respondent with a means by which it could raise objections under secs. 10 and 11.

The *Riko* court quoted from *The Hartbridge*, 57 F.2d 672, 673 (2nd Cir. 1932), cert. denied, *Munson Steamship Line v. North England Steamship Co.*, 288 U.S. 601 (1933), wherein that court stated:

". . . Upon a motion to confirm the party opposing confirmation may apparently object upon any ground which constitutes a sufficient cause under the statute to vacate, modify, or correct, although no such formal motion has been made. . . .

". . . Although more than three months have elapsed since the award was filed, the appellant may still assert objections to confirmation of the award. There is authority for the proposition that even after the statutory period for moving to vacate an award has expired, a party may use the statutory grounds for vacation in defense of a motion to confirm. . . ."

In *Paul Allison, Inc. v. Minikin Storage of Omaha, Inc.*, 452 F. Supp. 573 (D. Neb. 1978), the court held that the three-month requirement in 9 U.S.C. sec. 12, is inapplicable when the party who prevails at the arbitration moves to confirm the award and the defendant desires to raise objections in response to that motion.

*See also: Catz American Co. v. Pearl Grange Fruit Exchange, Inc.*, 292 F. Supp. 549 (S.D.N.Y. 1968).[2]

We find the holdings of the federal authorities persuasive. We also believe the language used by the legislature in the enactment of sec. 298.09, Stats., is signifi-

[2] *Contra: See Emporium Area Joint School Authority v. Anundson Construction & Building Supply Co.*, 402 Pa. 81, 166 A.2d 269 (1960).

The Pennsylvania arbitration statutes are nearly identical to the Wisconsin statutes. The Pennsylvania Supreme Court held that if the adverse party did not move to vacate the award within the statutory three months, such party was barred from contesting the motion to confirm the award when the motion to confirm was made within one year but more than three months after the date of the award.

cant. This section states in part that the trial court shall grant the application for an order confirming an award "unless the award *is* vacated, modified or corrected as prescribed in the next two sections. [secs. 298.10 and 298.11]" (Emphasis supplied.) Sec. 298.09 does not say the order for confirmation shall be granted unless the award has been vacated, modified or corrected as provided in sec. 298.13, Stats. Obviously, if an award of an arbitrator has been vacated, modified or corrected under sec. 298.13, the arbitrator's award could not be confirmed. Also, the language in sec. 298.09, "unless the award is vacated, modified or corrected as prescribed in the next two sections, "would be superfluous if the arbitrator's award could not be challenged on those statutory grounds at the time of the application for confirmation.

We, therefore, hold that the time strictures of sec. 298.13, Stats., are inapplicable when a party who prevails at an arbitration decides to move to confirm the award and the adverse party desires to raise objections by responding with a motion to vacate, modify or correct the award as prescribed in secs. 298.10 and 298.11.

*By the Court.*—Judgment reversed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting).* I would affirm the circuit court's order confirming the arbitration award, because the City of Milwaukee did not serve its motion to vacate, modify or correct the award within three months after the award was filed or delivered as required by sec. 298.13, Stats.[1] I believe

___

[1] Sec. 298.13, Stats., provides:

"**Notice of motion to change award.** Notice of a motion to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered, as proscribed by law for service of notice of a motion in an action. For the purposes of the motion any judge who

the majority incorrectly interprets secs. 298.09, 298.10, 298.11 and 298.13 to give a party a choice of when to assert a defense to an arbitration award. The majority says the party may move to vacate, modify or correct the award either within the statutory three month period or when an application to confirm the award is made. As a practical matter the majority renders sec. 298.13 meaningless. The party opposing an award need not promptly object to the award. He may simply ignore the award. The successful party must then seek an order confirming the award, at which time objection to the award can be raised.

Chapter 298 must be construed as a whole and each section must be given effect. Reading secs. 298.09, 298.10, 298.11 and 298.13 together, I conclude that the legislative intent was to place the burden on the objector to move to vacate, modify or correct the award within the statutory three-month period and that, if the objector fails to do so, the proponent of the award still has nine months in which to ask the court to confirm the award. Limiting the time to challenge the award furthers the purposes of arbitration and the goal of the arbitration statutes, namely to obtain a prompt and conclusive answer to issues submitted to arbitration.

Courts interpreting state statutes similar to Wisconsin's have construed the arbitration statutes in the manner I urge here.[2] The majority opinion, instead of

---

might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award."

[2] *Emporium Area Jt. School Auth. v. Anundson, Const. & Bldg. Supply Co.*, 402 Pa. 81, 166 A.2d 269, 270 (1960); *Textile Workers Union v. Uncas Printing & Finishing Co.*, 20 Conn. Sup. 91, 125 A.2d 236, 239 (1956); *Kilby; v. St. Paul Ins. Co.*, 29 Conn. Sup. 22, 269 A.2d 295, 296–297 (1970); *Harris v. Security Ins. Group*, 140 N.J. Super 10, 354 A2d 704, 706 (1976); *DeMello v. Souza*, 36

following these state court cases, follows the holdings of several federal district courts to the contrary. I do not find the cases cited by the majority persuasive. The key case upon which the majority opinion and the federal district courts rely, without discussion or analysis, is *The Hartbridge Case*.[3] That case did not decide the issue presented here. In *The Hartbridge* a party to an award brought an action to confirm the award within three months of the date of service of the award. The opposing party challenged the court's jurisdiction to confirm the award prior to the expiration of the statutory three-month period and stated that it intended to move to vacate the award within the statutory three-month period. The district court granted the motion to confirm the award apparently believing it need not hear the objections in a proceeding to confirm. The court of appeals reversed the district court's confirmation of the award and held that objections must be made in the confirmation proceeding if the confirmation proceeding is brought prior to a motion to vacate.

The court of appeals was then faced with the problem that as a result of the appeal proceedings more than three-months had expired since the award was made, and the opposing party had not yet moved to vacate the award. The court concluded that the appeal tolled the

Cal. App.3d 79, 111 Cal. Reptr. 274, 277 (1973). *See also* Annot., *Time for Impeaching Award*, 85 A.L.R.2d 779, 785–794 (1962).

Compare New York Civil Practice Act secs. 7510 and 7511, which specifically retain the New York provisions that the grounds for vacating or modifying an award may be urged in opposition to a motion to confirm although a motion based on such grounds is not timely. *See* Commentary, 7B McKinney's Consolidated Laws of New York Annotated (1963); *Grayson-Robinson Stores, Inc. v. Iris Constr. Corp.*, 7 A.D.2d 367, 183 N.Y.S.2d 695, app. den. 8 A.D.2d 698, 185 N.Y.S.2d 746 (1959), aff'd, 8 N.Y.2d 133, 202 N.Y.S.2d 303, 168 N.E.2d 377 (1960).

[3] 57 F.2d 672 (2d Cir. 1932), *cert. denied, Munson Steamship Line v. North of England Steamship Co. Ltd.*, 288 U.S. 601 (1933).

three-month statutory period and that the opposing party could assert objections to the confirmation of the award when the matter was remanded. The court of appeals carefully stated that it was not deciding the broader question of an opposing party's right to move to vacate after the statutory three-month period expired. The majority opinion's brief quotation from *The Hartbridge* is misleading if it is read to mean that the court of appeals held that in all applications to confirm, the opposing party may, outside the three-month statutory time limit, move to vacate. I quote the entire portion of *The Hartbridge* opinion dealing with this issue in the margin.[4]

---

[4] ". . . As we understand the statute a motion to confirm puts the other party to his objections. He cannot idly stand by, allow the award to be confirmed and judgment thereon entered, and then move to vacate the award just as though no judgment existed. See Gaines v. Clark, 23 Minn. 64; Brace v. Stacy, 56 Wis. 148, 14 N.W. 51. Section 12 sets an outside limit within which a notice to vacate must be served; it does not say that such a motion may be made at any time within the three months even though the award has gone into judgment. After judgment we think the award can be vacated only if the judgment can be, and to vacate the judgment an adequate excuse must be shown for not having presented objections to the ward when the motion to confirm was heard. Consequently we think the court erred in confirming the award as of course, when it was advised that objections were to be made but could not be presented because of missing exhibits. It does not, it is true, appear why the exhibits were material to the grounds for vacation intended to be urged, but the court did not refuse a continuance for that reason. On the contrary, the judge said he had no discretion and could only confirm.

"Accordingly, the order must be reversed. Although more than three months have elapsed since the award was filed, the appellant may still assert objections to confirmation of the award. There is authority for the proposition that even after the statutory period for moving to vacate an award has expired, a party may use the statutory grounds for vacation in defense of a motion to confirm. See Matter of Picker, 130 App. Div. 88, 114 N.Y.S. 289; Shores v. Bowen, 44 Mo. 396; Hinkle v. Harris, 34 Mo. App. 223.

The legislative history of the Wisconsin arbitration act supports my contention that the legislature intended to allow a longer time for confirming an award than for vacating, modifying or correcting it.

Chapter 298 of the Wisconsin Statutes was adopted in 1931.[5] As the majority opinion notes, the Wisconsin statute is nearly identical to the Pennsylvania arbitration statute. The Wisconsin and Pennsylvania arbitration statutes are modeled after the Uniform Arbitration Act of 1925.[6] Sections 15,[7] 16,[8] 17,[9] and 18[10] of the Uniform

---

But without committing ourselves to the correctness of this construction of the statute, it will suffice to say that we think the period of the appeal may be excluded from the three month period prescribed by section 12. The appeal removed the entire record from the District Court so that thereafter the appellant could not have moved to set aside the order of confirmation and to entertain a motion to vacate the award." *The Hartbridge,* 57 F.2d at 672, 673.

[5] Ch. 274, Laws of 1931.

[6] Historical Note, 9 Uniform Laws Annotated, p. 60 (1942); Historical Note, 9 Uniform Laws Annotated, p. 76 (1957); *Emporium Area Jt. School Auth. v. Anundson Const. & Bldg. Supply Co.,* 402 Pa. 81, 166 A.2d 269, 270 (1960).

[7] Sec. 298.09, Stats.:

"**Court confirmation award, time limit.** At any time within one year after the award is made any party to the arbitration may apply to the court in and for the county within which such award was made for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified or corrected as prescribed in the next two sections. Notice in writing of the application shall be served upon the adverse party or his attorney 5 days before the hearing thereof."

Sec. 15, Uniform Arbitration Act (1925):

"[Application for Order Confirming Award].—At any time within three months after the award is made, unless the parties shall extend the time in writing, any party to the arbitration may apply to the court for an order confirming the award, and the court shall grant such an order unless the award is vacated, modified, or corrected, as provided in the next two sections. Notice in writing of the motion must be served upon the adverse party, or his attorney, five days before the hearing thereof."

Arbitration Act (1925) are nearly identical to secs. 298.09, 298.10, 298.11 and 298.13 of the Wisconsin Arbitration Act. The only significant difference between

---

8 Sec. 298.10, Stats.:

"**Vacation of award, rehearing by arbitrators.** (1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:

"(a) Where the award was procured by corruption, fraud or undue means;

"(b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

"(2) Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."

Sec. 16, Uniform Arbitration Act (1925):

"[Vacation of Award; Rehearing by Arbitrators].—In any of the following cases the court shall after notice and hearing make an order vacating the award, upon the application of any party to the arbitration:

"(a) Where the award was procured by corruption, fraud or other undue means.

"(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

"(c) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehavior, by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award, upon the subject matter submitted was not made.

Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."

these sections of the two Acts relate to the time for making an application for an order to confirm and the time for giving notice of motion to change award. The

[9] Sec. 298.11, Stats.:

"**Modification of award.** (1) In either of the following cases the court in and for the county wherein the award was made must make an order modifying or correcting the award upon the application of any party to the arbitration:

"(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing or property referred to in the award;

"(b) Where the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted;

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"(2) The order must modify and correct the award, so as to effect the intent thereof and promote justice between the parties."

Sec. 17, Uniform Arbitration Act (1925):

"[Modification or Correction of Award].—In any of the following cases, the court shall after notice and hearing make an order modifying or correcting the award, upon the application of any party to the arbitration:

"(a) Where there was an evident miscalculation of figures, or an evident mistake in the description of any person, thing or property, referred to in the award.

"(b) Where. the arbitrators have awarded upon a matter not submitted to them.

"(c) Where the award is imperfect in a matter of form, not affecting the merits of the controversy.

"The order must modify and correct the award, so as to effect the intent thereof."

[10] Sec. 298.13, Stats.:

"**Notice of motion to change award.** Notice of a motion to vacate, modify or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered, as prescribed by law for service of notice of a motion in an action. For the purposes of the motion any judge who might make an order to stay the proceedings in an action brought in the same court may make an order, to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award."

Uniform Act limited the time for both motions to three months and allowed the parties to extend the time for an application for confirmation; there was no express provision in the Act for extending the time to move to vacate. The Wisconsin statutes allowed one year for applying for court confirmation of the award and allowed only three months to move to vacate, modify or correct.

The 1925 Uniform Arbitration Act was superseded by the 1955 Uniform Arbitration Act. The 1955 Act imposes no time limit on applying for a confirmation order[11] and limits the time for vacating,[12] modifying or

Sec. 18, Uniform Arbitration Act (1925):

"[Notice of Motion to Vacate, Modify or Correct; Stay of Proceedings].—Notice of a motion to vacate, modify or correct an award shall be served upon the adverse party, or his attorney, within three months after an award is filed or delivered, as prescribed by law for service of notice of a motion in an action. For the purposes of the motion any judge who might make an order to stay the proceedings, in an action brought in the same court, may make an order to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award."

[11] Sec. 11, Uniform Arbitration Act (1955):

"Confirmation of an Award.—Upon application of a party, the Court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in Sections 12 and 13."

[12] Sec. 12, Uniform Arbitration Act (1955):

"Vacating an Award. (a) Upon application of a party, the court shall vacate an award where:

"(1) The award was procured by corruption, fraud or other undue means;

"(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

"(3) The arbitrators exceeded their powers;

"(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, con-

correcting[13] the award to ninety days after the delivery of a copy of the award to the applicant. The 1955 Uniform Arbitration Act has, as far as I can determine,

trary to the provisions of Section 5, as to prejudice substantially the rights of a party; or

"(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under Section 2 and the party did not participate in the arbitration hearing without raising the objection;

but the fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

"(b) An application under this Section shall be made within ninety days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud or other undue means, it shall be made within ninety days after such grounds are known or should have been known.

"(c) In vacating the award on grounds other than stated in clause (5) of Subsection (a) the court may order a rehearing before new arbitrators chosen as provided in the agreement, or in the absence thereof, by the court in accordance with Section 3, or if the award is vacated on grounds set forth in clauses (3) and (4) of Subsection (a) the court may order a rehearing before the arbitrators who made the award or their successors appointed in accordance with Section 3. The time within which the agreement requires the award to be made is applicable to the rehearing and commences from the date of the order.

"(d) If the application to vacate is denied and no motion to modify or correct the award is pending, the court shall confirm the award. As amended Aug. 1956."

[13] Sec. 13, Uniform Arbitration Act (1955):

"Modification or Correction of Award.—(a) Upon application made within ninety days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

"(1) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

"(2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

"(3) The award is imperfect in a matter of form, not affecting the merits of the controversy.

been consistently interpreted to prohibit a party from moving to vacate the award in a confirmation proceeding, if that confirmation proceeding is brought after the ninety-day period has run.[14]

It is clear from a comparison of these sections of the 1925 Uniform Arbitration Act and the Wisconsin Arbitration Act that the Wisconsin legislature intended that the time for vacating, modifying or correcting the award be shorter than the time for confirming it. The draftsmen of the 1955 Uniform Arbitration Act deliberately chose to limit the time for vacating the award (and not for confirming the award), because they believed that the short time limit for a motion to vacate promotes the purpose of the arbitration act.

I would affirm the circuit court's order confirming the award because the very language of the statutory provisions in issue, the interpretations of similar statutes by courts of other jurisdictions, the legislative history of the Wisconsin Arbitration Act, and public policy all

"(b) If the application is granted, the court shall modify and correct the award so as to effect its intent and shall confirm the award as so modified and corrected. Otherwise, the court shall confirm the award as made.

"(c) An application to modify or correct an award may be joined in the alternative with an application to vacate the award."

[14] *Bloom v. Landy*, 27 Ill. Dec. 878, 389 N.E.2d 1286, 1295 (1979); *R. C. Audette & Sons, Inc. v. LaRochelle*, 373 A.2d 1226, 1227 (Me. 1977); *Nick-George Ltd. Partn. v. Ames-Ennis, Inc.*, 279 Md. 385, 368 A.2d 1001 (1977); *Security Construction Co. v. Maietta*, 25 Md. App. 303, 334 A.2d 133 (1975); *Wacker v. Allstate Ins. Co.*, 251 N.W.2d 346, 350 (Minn. 1977); *Component Systems, Inc. v. Murray Enterprises of Minnesota, Inc.*, 300 Minn. 21, 217 N.W.2d 514 (1974); *Lopez & Roque Tile Co. Inc. v. Clearwater Dev. Corp.*, 291 So.2d 126 (Fla. App. 1974); *Trustees of the Boston & Maine Corp. v. Mass. Bay Trans. Auth.*, 363 Mass. 386, 294 N.E.2d 340, 346 (1973); *Greene v. Mari & Sons Flooring Co., Inc.*, 362 Mass. 560, 289 N.E.2d 860, 861 (1972).

lead to the conclusion that Chapter 298 limits the time to move to vacate, modify or correct the award to three months after the award is filed or delivered.

I have been authorized to state that Mr. Justice DAY joins in this dissenting opinion.