Milwaukee Police Association, Rod Gustafson and Javier Cornejo, Plaintiffs-Appellants,

v.

City of Milwaukee, Defendant-Respondent.†

Court of Appeals

*No. 01–1057. Submitted on briefs December 4, 2001.—Decided January 8, 2002.*

2002 WI App 43

(Also reported in 641 N.W.2d 709.)

† Petition to review denied 3-19-02.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *William R. Rettko* of *Rettko Law Offices, S.C.*, Brookfield.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Grant F. Langley*, city attorney, and *Thomas J. Beamish*, and *Stuart S. Mukamal*, assistant city attorneys, Milwaukee.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. FINE, J. Milwaukee police officers Rod Gustafson and Javier Cornejo, and their union, the Milwaukee Police Association, appeal from a determi-

nation by the trial court not to compel the City of Milwaukee to arbitrate grievances filed by Gustafson and Cornejo. We reverse.

## I.

¶ 2. The grievances filed by Gustafson and Cornejo alleged that they were transferred from the police department's Tactical Enforcement Unit as retaliation for, in essence, stepping on the administrative toes of then Deputy Inspector (now Chief of Police) Arthur Jones, and for complaining about Jones's alleged misconduct in connection with Jones's alleged attempt to interfere with the officers' investigation of suspected criminal activity. The grievances claimed that the officers were investigating a report that a member of the Vice Lords street gang had, among other things, "pointed a handgun at 7 citizens and fired 10 shots at a juvenile." The grievances charged that: "Just prior to an actual arrest, Deputy Inspector Arthur Jones ordered our investigation to cease." As a consequence of Jones's order and subsequent actions by Jones that are not fully explained in the record, the grievances asserted that "7 police officers alleged misconduct perpetrated by [Deputy Inspector] Jones resulting in [Gustafson and Cornejo] being transferred." The grievances contended that the transfers violated "Article 7 and Article 55" of the collective bargaining agreement between the Police Association and the City, as well as what the grievances described as "the 'Chief's Advisory Transfer Committee' Section 5 memorandum."

¶ 3. The officers also filed a federal-court action against Jones and then police chief, Philip Arreola, that alleged that Jones and Arreola violated the officers' free-speech rights under the First Amendment to the United States Constitution. A jury agreed with the

officers' contentions and found that the officers' exercise
of their free-speech rights "was the substantial or
motivating factor in the decision to transfer [Gustafson
and Cornejo] from the Tactical Enforcement Unit and
[Arreola's and Jones's] decision not to reassign
[Gustafson and Cornejo] to the Tactical Enforcement
Unit." The jury also found that Arreola and Jones acted
in a "willful, wanton, or malicious" manner. Judgment
was entered against both Jones and Arreola awarding
each of the officers $10,000 in compensatory damages
and $180,000 in punitive damages. The case is cur-
rently on appeal before the United States Court of
Appeals for the Seventh Circuit.

¶ 4. Although Gustafson and Cornejo filed the
grievances in 1993, they and the City agreed to hold
them open pending resolution of the federal-court ac-
tion. Pursuant to an agreement between the City and
the officers, a hearing before an arbitrator on the
officers' grievances was held in May of 2000. After some
discussion and argument before the arbitrator, the City
refused to arbitrate. The officers then brought this
action. The trial court ruled that the grievances "were
not procedurally arbitrable."

## II.

¶ 5. Unless the agreement to arbitrate specifically
vests in the arbitrator the "final and binding" determi-
nation as to whether a particular dispute is subject to
arbitration, that determination is made by the courts.
*Kimberly Area Sch. Dist. v. Zdanovec*, 222 Wis. 2d 27,
39–42, 586 N.W.2d 41, 47 (Ct. App. 1998). It does not
appear from the appellate record that the collective
bargaining agreement here gives to the arbitrator the
"final and binding" decision as to whether a dispute is

subject to arbitration. The trial court found that the alleged retaliatory transfer was subject to arbitration under the collective bargaining agreement, and the City does not dispute this determination on this appeal. The trial court held, however, that the grievances filed by the officers did not comply with the collective bargaining agreement because they did not, as required by the agreement, "set forth the provision of the Agreement and/or the rule or regulation of the Chief of Police under which the grievance was filed." Whether a dispute between an employer and an employee under a collective bargaining agreement is subject to that agreement's grievance/arbitration provisions is a question of law that we review *de novo. Id.*, 222 Wis. 2d at 37, 586 N.W.2d at 45.

¶ 6. As noted, the grievances and the federal-court lawsuit filed by officers Gustafson and Cornejo alleged that they were transferred from the Tactical Enforcement Unit in retaliation for their complaints about what they believed was Jones's unwarranted interference with their law-enforcement responsibilities. The grievances cited Article 7 of the collective bargaining agreement as among the provisions the officers claimed were violated by the transfer. Article 7 provides, as material here, that "[d]ifferences involving the interpretation, application or enforcement of the provisions of this Agreement or the application of a rule or regulation of the Milwaukee Police Department affecting wages, hours, or conditions of employment shall constitute a grievance under the provisions set forth below." The police department denied the grievances without first inquiring whether the allegations were true or false, and relied on the so-called management-rights clause of the collective bargaining agreement:

681

> Grievance denied; no contract violation. The assignment and transfer of [the] Department members is a management right expressly reserved to the Chief of Police under Article 5, Paragraph 6 of the labor contract. The grievant has no right to a specific assignment in the Department, nor does he have a right to remain in a particular assignment indefinitely or for a specific period of time.[1]

Paragraph 6 of Article 5 provides: "The City shall have the right to transfer employees within the Police Department in a manner most advantageous to the City." Paragraph 1 of Article 5 vests in the chief of police and the Board of Fire and Police Commissioners the right "to operate and manage their affairs in all respects in accordance with the laws of Wisconsin, ordinances of the City, Constitution of the United States and Section 111.70 of the Wisconsin Statutes."

¶ 7. The crux of the City's decision to not arbitrate the grievances filed by Gustafson and Cornejo, and of the trial court's ruling upholding that decision, is that counsel for the officers indicated at the hearing before the arbitrator that Gustafson and Cornejo were relying on the management-rights clause in Article 5, paragraph 1, which subjected the exercise of police-management discretion to the United States Constitution. This is how the officers' lawyer expressed it:

> It's the grievants' position that they were transferred in retaliation of their First Amendment free speech rights by then Chief Arreola in conjunction with then Deputy Inspector Arthur Jones. And that through the course of many years that have followed that transfer, which took place in November 1993, that the retaliation has continued thereafter.

---

[1] The "the" that we have placed in brackets appears only in the denial of Gustafson's grievance.

When asked by the arbitrator whether he was abandoning the contention in the officers' grievances that the alleged retaliatory transfer "constitutes discipline" in violation of Article 7, the officers' lawyer responded: "Your Honor, that's exactly where we are going. We are saying that what's happened here is in violation of Article 5, management rights, sub one." He further explained that retaliatory transfer in violation of the officers' free-speech rights under the United States Constitution violated "the implied covenant of good faith and fair dealing that runs with this collective bargaining agreement and it is an out and out breach of the contract in and of itself."

¶ 8. The trial court held that in light of the officers' reliance at the arbitration hearing on Article 5, paragraph 1 they did not comply with the requirement in the collective bargaining agreement that a grievance "set forth the provision of the Agreement and/or the rule or regulation of the Chief of Police under which the grievance was filed." This is how the trial court expressed it in its oral decision:

> Plaintiffs argue that their citation [to] Article 7 is sufficient to place the City on notice because it informed the City that they were seeking the application and enforcement of a provision in the collective bargaining agreement, specifically in this case Article 5(1). However, since any grievance by definition is seeking the application and enforcement of a provision in the collective bargaining agreement, a general citation of Article 7, I find is an adequate [should be "inadequate"] notice of what provision in the collective bargaining agreement is in issue.

In its brief before us, the City is a bit more colorful in its contention that the grievances were inadequate:

The Grievants' last-minute reconfiguration and re-incarnation of their Grievances as a Constitutional challenge to the Chief of Police's exercise of his management rights in effectuating the challenged transfers/reassignments, relying upon Article 5 § 1 of the [collective bargaining agreement], was unforeseeable, unanticipated, sprung on the City without warning, and was explicitly intended to 'blindside' the City and impair its ability to adequately prepare for and defend its position during the course of the arbitration proceedings.

The officers contend that under "notice pleading" concepts, their grievances were sufficient to commence the arbitration process. We agree.

## III.

¶ 9. How specific a grievance needs to be to permit arbitration of that grievance is a matter of first impression in Wisconsin, and the law elsewhere is sparse. We start with the universal proposition, however, that parties to a collective bargaining agreement are bound by the terms of that agreement, *Kimberly Area Sch. Dist.*, 222 Wis. 2d at 39, 586 N.W.2d at 46 ("a party is not required to submit any dispute to arbitration unless it has agreed to do so"), unless, of course, the terms violate the law, *Mullen v. Coolong*, 132 Wis. 2d 440, 454, 393 N.W.2d 110, 116 (Ct. App. 1986) ("A contractual provision voluntarily made between competent parties is valid and enforceable unless it violates a statute, rule of law, or public policy."), *overruled on other grounds by Nicholson v. Home Ins. Cos.*, 137 Wis. 2d 581, 600, 405 N.W.2d 327, 334–335 (1987).

¶ 10. In deciding whether to direct parties to an arbitration agreement to submit their dispute to arbitration, a court must consider the following general principle:

> "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*Milwaukee Police Ass'n v. City of Milwaukee*, 92 Wis. 2d 145, 152, 285 N.W.2d 119, 122 (1979) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–583 (1960)). Here, the parties to the collective bargaining agreement agreed to submit arbitrable disputes to arbitration so long as the grievance triggering the arbitration process "set forth the provision of the Agreement and/or the rule or regulation of the Chief of Police under which the grievance was filed." The issue here is whether this prerequisite was met.

¶ 11. The principle enunciated in *Milwaukee Police Ass'n*, that courts should order arbitration unless "it may be said with positive assurance" that the arbitration agreement does not permit the order, 92 Wis. 2d at 152, 285 N.W.2d at 122, is consistent with the following observation in *Ohio Council 8 v. Central State University*, 474 N.E.2d 647, 651 (Ohio Ct. App. 1984), which we adopt:

> In view of the purpose and use of these allegations in creating issues for resolution in arbitration, through non-judicial channels by laymen, we are reluctant to adopt a test more strict than the liberalized notice pleading in the courts. If anything, the rule should be more liberal in determining the subject or issue submitted to an arbitrator.

685

Although *Milwaukee Police Ass'n* decided whether an issue was *subject* to arbitration, and *Ohio Council 8* concerned the scope of issues presented to an arbitrator for decision, we believe that the underlying policy favoring arbitrability also applies to whether a grievant has crossed all the requisite T$^s$ and dotted all the applicable I$^s$.

¶ 12. The grievance in this case indicated on its face that it was filed, *inter alia,* under Article 7, which, as we have seen, encompasses "[d]ifferences involving the interpretation, application or enforcement" of the collective bargaining agreement "or the application of a rule or regulation" of the police department "affecting . . . conditions of employment."[2] This provision thus encompasses the complaint alleged in the officers' grievances—their contention that their "working conditions" were adversely affected in retaliation for their exercise of their free-speech rights under the United States Constitution. As noted, the police department denied the grievances as a matter of contract interpretation, without inquiry into the truth or falsity of the officers' allegations, based on its view that the rights granted to department management by Article 5 of the collective bargaining agreement permitted Arreola and Jones to do what Gustafson and Cornejo claim they did: transfer them from one duty assignment to another in

[2] Gustafson and Cornejo do not contend that either Article 55 of the collective bargaining agreement or "the 'Chief's Advisory Transfer Committee' Section 5 memorandum," both referenced in their grievances, apply. Although we are not bound by a party's argument, *Watts v. Watts,* 152 Wis. 2d 370, 384, 448 N.W.2d 292, 298 (Ct. App. 1989), in light of our resolution of this appeal on other grounds we do not need to decide whether they apply, *see Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

retaliation for their speaking out about what they contended was misconduct by Jones.

¶ 13. Article 5, paragraph 1 of the collective bargaining agreement is a "management rights" provision, and is so headed; it is not an "employee rights" provision and gives officers in the Milwaukee Police Department *no* rights beyond what they would have if the clause did not exist: no governmental entity or officer may lawfully act contrary to the United States Constitution. Thus, although the officers' attorney indicated at the truncated hearing before the arbitrator that he was relying on the recognition in Article 5, paragraph 1 that the management rights of the police department were subject to the United States Constitution, the grievances were not "filed" under Article 5; they were filed under Article 7, and this complies with the requirement in Article 7, paragraph 4 that the grievances "set forth the provision of the Agreement and/or the rule or regulation of the Chief of Police under which the grievance was filed." That the officers' attorneys sharpened the focus of their legal theory does not deprive the arbitrator of jurisdiction over their grievances. *See Board of Educ. v. Sussex County Vo-Tech Teachers' Ass'n*, 1995 WL 1799135, at *3 (Del. Ch. 1995) (recognizing that "arguments" on which a grievance is based "may be modified" in the course of the proceedings). Significantly, the collective bargaining agreement does *not* require that grievants specify either a provision of the agreement or a department rule or regulation that they contend was violated; by the clear language of the collective bargaining agreement, a grievance passes specificity muster if it identifies the provision under which it is filed. *See Cernohorsky v. Northern Liquid Gas Co.*, 268 Wis. 586, 593, 68 N.W.2d 429, 433 (1955)

(unambiguous contractual language must be enforced as it is written "even though the parties may have placed a different construction on it"). The grievances filed by Gustafson and Cornejo did precisely that, and the City had fair notice of the issues to be arbitrated.[3]

*By the Court.*—Order reversed and cause remanded with directions.

---

[3] In light of the forceful allegations in the officers' grievances and the federal-court lawsuit, and the jury's verdict in that lawsuit, which the United States magistrate judge determined in his post-verdict decision was supported by "ample evidence in the record," the City's colorful claim of sandbagging and unfair surprise is hyperbole unworthy of government lawyers representing a governmental entity. "An inscription on the walls of the Department of Justice states the proposition candidly for the federal domain: 'The United States wins its point whenever justice is done its citizens in the courts.' " *Brady v. Maryland*, 373 U.S. 83, 87 (1963). We see no reason why the same maxim does not apply to state and municipal government as well. Of course, government attorneys are not neutrals; they are advocates. *See id.*, 373 U.S. at 87 n.2. We believe, though, that the following observation of former Solicitor General Simon Sobeloff, and later a judge on the United States Court of Appeals for the Fourth Circuit, applies equally as well to government lawyers at all levels:

> The Solicitor General is not a neutral, he is an advocate; but an advocate for a client whose business is not merely to prevail in the instant case. My client's chief business is not to achieve victory but to establish justice. We are constantly reminded of the now classic words penned by one of my illustrious predecessors, Frederick William Lehmann, that the Government wins its point when justice is done in its courts.

*Ibid.*