KIMBERLY AREA SCHOOL DISTRICT, Board of Education of the Kimberly Area School District and Melvin Lightner, Superintendent of the Kimberly Area School District, Plaintiffs-Respondents,

v.

Susan ZDANOVEC and Kimberly Education Association, Defendants-Appellants.†

Court of Appeals

*No. 98–0783. Submitted on briefs July 10, 1998.—Decided September 15, 1998.*

(Also reported in 586 N.W.2d 41.)

†Petition to review denied.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Simon M. Karter* and *Mary E. Pitassi* of *Wisconsin Education Association Council* of Madison.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Roger E. Walsh* and *Nancy L. Pirkey* of *Davis & Kuelthau, S.C.* of Milwaukee.

Before Cane, C.J., Myse, P.J., and Hoover, J.

CANE, C.J.    Defendants Susan Zdanovec and the Kimberly Education Association (Zdandovec) appeal an order denying their motion for judgment on the pleadings and motion for an order directing the parties to grievance and arbitration proceedings pursuant to § 788.02, STATS. Additionally, they appeal a declaratory judgment granted in favor of plaintiffs Kimberly Area School District, the Board of Education of the Kimberly Area School District, and district superintendent Melvin Lightner (district). The declaratory judgment decreed that under a settlement agreement: (1) Zdanovec resigned her employment from Kimberly Area School District; (2) Zdanovec waived her grievance rights under a collective bargaining agreement; and (3) Zdanovec's grievance proceeding would be dismissed. On appeal, Zdanovec asserts that the trial court lacked "jurisdiction" over the dispute, that the district materially breached the settlement agreement, and that

30

misrepresentation during settlement agreement negotiations entitles them to rescission. We disagree and therefore affirm the order and judgment.

## I. BACKGROUND

### A. Facts

Kimberly Area School District is a public school district located in Kimberly, Wisconsin. A seven-member board of education operates the district, while superintendent Melvin Lightner oversees and directs the district's daily operations. Kimberly Education Association, a labor organization, is the exclusive representative for a bargaining unit consisting of all the district's contracted professional teaching personnel. Zdanovec taught special education at the district's Janssen Elementary School from August 1983 to June 1996 and therefore was a member of the bargaining unit. The district and the association entered into a collective bargaining agreement effective the first day of the 1995–96 school year and expiring June 4, 1997. The collective bargaining agreement included a grievance and arbitration procedure.

The record sets forth the following timeline of events. In August 1995, Lightner began an internal investigation of allegations that Zdanovec had inappropriately disciplined her students. On August 31, Lightner notified Zdanovec, in writing, of the investigation. During the investigation, Lightner received a phone call from Jeffrey Spitzer-Resnick, attorney for the parents of three of Zdanovec's students. Spitzer-Resnick indicated that he intended to file a federal lawsuit against the district for the injuries students received from Zdanovec's alleged inappropriate discipline. Indeed, he filed suit in federal court on

September 11, naming the district, Zdanovec, and Lightner (both in his individual and official capacities) as defendants.

On September 22, Lightner filed a complaint with the board charging Zdanovec with improper conduct. He also requested a hearing and recommended Zdanovec's termination. In addition, Lightner placed Zdanovec on administrative leave without pay pending the outcome of the hearing. The board scheduled a hearing on the written complaint for October 17. On or before October 10, Lightner and Roger Walsh, the district's attorney, prepared prospective witnesses to testify at the hearing, and one of those witnesses was Mary Rutten, a parent of one of Zdanovec's former students and a plaintiff in the federal lawsuit. Rutten's attorney, Spitzer-Resnick, accompanied her to the meeting. During this meeting, a discussion occurred regarding whether Zdanovec would continue teaching in the district and whether Lightner would be dismissed from the federal lawsuit in his personal and/or official capacities. Lightner indicated that he did not want Zdanovec to work in the district again.

While the October 17 hearing occurred as planned, the scheduled hearing on October 18 did not. Rather, Lightner and Walsh met with Zdanovec; her union representative, James Vande Castle; and Zdanovec's attorney, James Starrett. At this meeting, the parties reached a voluntary settlement, which was memorialized and presented to the board that same evening. At that time, the board requested an addendum to the settlement agreement requiring the board president to consult with the board before voting on whether to continue Zdanovec's employment. All parties accepted the addendum, which was incorporated into the settlement agreement's final terms.

The settlement agreement provides in part that: (1) Zdanovec would retain her teaching position for the remainder of the 1995–96 school year; (2) Zdanovec would be suspended without pay for the second semester of the 1995–96 school year; and (3) in April 1996, a three-person panel[1] would decide if Zdanovec's employment would continue after the 1995–96 school year. In addition to requiring the panel's vote to be unanimous, the settlement agreement further provided that the panel consider, "among other items," Zdanovec's psychological reports, her completion of a course of study Lightner directed, and her "job performance subsequent to October 23, 1995." Of particular note, neither the board nor Lightner recalled discussing the definition of "among other items" or whether they could consider the previous allegations. Zdanovec agreed to resign if the vote was not unanimous, and the settlement agreement would serve as her letter of resignation.

The settlement agreement specifically states that the panel's decision "is final and binding" and that Zdanovec agrees "not to contest the decision of these three individuals and agrees not to bring *any* suits, claims or actions against *any or all* of these three individuals or *any* member of the School Board in their individual and/or official capacities." (Emphasis added.) The following parties executed the settlement agreement: Zdanovec and her attorney, the association by two of its officers, the board by its president and clerk, and the district by Lightner.

On October 23, Walsh sent a letter to Spitzer-Resnick requesting that he dismiss Lightner from the federal lawsuit. Spitzer-Resnick replied that he had

[1] The panel members were Lightner, board president Gretchen Leverson, and association president Vande Castle.

previously suggested dismissing Lightner in his individual capacity, but not in his official capacity. Spitzer-Resnick also stated that he would not dismiss Lightner as a defendant because Lightner had "lied to [him] and Mary Rutten, when he told us in your presence, that he would never allow Ms. Zdanovec to work in his school district again."[2] When Zdanovec's attorney, Starrett, received a copy of Spitzer-Resnick's letter, he contacted Walsh to determine if Lightner had signed the settlement agreement in good faith. Walsh indicated that Spitzer-Resnick had misrepresented the previous discussion and that "whatever had occurred wasn't going to change the outcome of the agreement that we had entered into."

The panel evaluated Zdanovec between November 1995 and April 1996. Pursuant to the settlement agreement, Zdanovec completed a course of study that Lightner developed, and Lightner kept the panel apprised of her work. Later, at an April 8, 1996, meeting, board members expressed their personal views to the board president regarding whether Zdanovec should be retained as a teacher in the district. On April 9, the panel met to vote on Zdanovec's retention. Julie Holbrook, director of pupil services, who had been supervising Zdanovec's non-teaching duties, testified positively about Zdanovec's work. The panel then voted. Lightner voted for dismissal, while the other two members voted for retention. Zdanovec was notified of the result on April 9. Because the vote was not unanimous, Zdanovec voluntarily, per the settlement agreement, resigned. At an April 22 meeting, the board accepted Zdanovec's resignation. Additional facts will be discussed in the balance of this opinion.

---

[2] Lightner testified that he said, "I don't want her to work in our District again."

## B. Procedural history

On April 15, 1996, Zdanovec filed a grievance challenging the panel's decision and seeking reinstatement of her contract for 1996–97. The grievance alleges that: (1) the panel's vote was not based on the criteria set forth in the settlement agreement; (2) the settlement agreement was "entered in bad faith" because, unknown to Zdanovec, the district had "made a prior committment to third parties"; (3) the settlement agreement was void; and, therefore, (4) the panel's vote to terminate Zdanovec's employment violated her rights under the collective bargaining agreement, including, but not limited to, art. 5.2.[3] In particular, Zdanovec stated that she "hereby exercises her right under Article 19.2c" of the collective bargaining agreement.[4] On April 22, the district filed for declaratory relief under § 806.04, STATS., seeking to enforce Zdanovec's resignation under the settlement agreement and to dismiss Zdanovec's grievance and any resulting arbitration. On August 15, Zdanovec filed a motion for

---

[3] Article 5.2 of the collective bargaining agreement provides, in pertinent part:

> The Association recognizes the legal obligation of the Corporation to give each teacher employed by it a written notice of renewal or non-renewal of his/her contract for the ensuing school year on or before March 15 of the school year during which said teacher holds a contract pursuant to Section 118.22 of the Wisconsin Statutes and amendments thereto of the Wisconsin Statutes. Non-renewal is defined as the termination of employment effective upon the expiration of the individual contract for unsatisfactory performance.

[4] Article 19.2c provides that "[a]ll discharges, non-renewals and suspensions except those involving probationary personnel and those itemized under 2.3, will, at the teacher's option, be subject to review through the Grievance Procedure."

judgment on the pleadings and motion for an order directing the parties to grievance and arbitration proceedings under § 788.02, STATS. The district then filed a motion for summary judgment. On October 17, the trial court denied the pending motions and scheduled a factfinding hearing regarding the validity of the settlement agreement[5] and whether the parties had complied with its terms.

After a three-day factfinding hearing, the trial court established a briefing schedule for the submission of post-hearing arguments. In its decision on declaratory relief, the trial court found the settlement agreement valid and enforceable. In granting the district declaratory relief, the court decreed that Zdanovec had resigned her employment and waived the right to the grievance process. Accordingly, the trial court dismissed Zdanovec's grievance proceeding. This appeal followed.

## II. ANALYSIS

Section 788.02, STATS., governs a party's right to arbitration:

> If any suit or proceeding be brought upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending, upon being satisfied that the issue involved in such a suit or proceeding is referable to arbitration under such an agreement, shall on

---

[5] Specifically, the court identified the two purposes of the fact-finding hearing as follows:

A.   Whether the disputed Settlement Agreement is void or unenforceable due to fraud or misrepresentation in the inducement, or for some other legal reason; and

B.   If it is not, whether there was compliance with the terms of the Settlement Agreement by the parties.

application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Whether a dispute is a grievance subject to arbitration under the collective bargaining agreement is a question of law we review de novo. *Racine Educ. Ass'n v. Racine Unified Sch. Dist.*, 176 Wis. 2d 273, 280–81, 500 N.W.2d 379, 382 (Ct. App. 1993). When a court determines arbitrability, that is, whether the dispute is subject to arbitration, the court's limited functions are to determine: (1) if there is a construction of the arbitration clause that would cover the grievance on its face; and (2) if another provision specifically excludes it. *Id.* at 281, 500 N.W.2d at 382.

As the district correctly points out, however, the question whether the trial court had authority to decide arbitrability is a *separate consideration* from whether the trial court's determination regarding arbitrability was correct. *See, e.g., Jefferson Joint Sch. Dist. No. 10 v. Jefferson Educ. Ass'n*, 78 Wis. 2d 94, 106–11, 253 N.W.2d 536, 543–44 (1977) (first addressing whether arbitrators have authority before analyzing the merits of arbitrability). Zdanovec fails to separate the two issues, but discusses why the trial court's decision was incorrect and faults the trial court for failing to engage in an analysis under *Racine*. *Racine*, however, goes to the *merits* of whether the dispute is subject to arbitration, not whether the trial court had authority to make that determination. *See generally id.* Therefore, we first address whether the trial court had authority to determine arbitrability.

## A. Court's Authority to Determine Arbitrability

Zdanovec argues that the trial court erred by determining that it had "jurisdiction" over the dispute. To support this argument, Zdanovec relies on three provisions of the collective bargaining agreement, arts. 5.2, 19.2c, and 4.1.[6] Citing these provisions, she argues that the question of arbitrability is for the arbitrator, not the courts, as the collective bargaining agreement's grievance arbitration procedure is this dispute's exclusive remedy. In support of her contention, Zdanovec makes two arguments: (1) a broad arbitration clause in a collective bargaining agreement confers authority on the arbitrator to determine arbitrability; (2) the claim of fraud in the inducement of the settlement likewise confers such authority on the arbitrator. We disagree.

■

The question of "substantive arbitrability," that is, whether the parties agreed to submit an issue to arbitration, is a question of law for the courts to decide. *Jefferson*, 78 Wis. 2d at 101–02, 253 N.W.2d at 540–41. The party asserting that the arbitrator must decide arbitrability "bear[s] the burden of a clear demonstration of that purpose." *Id.* In three cases known as the

---

[6] As set forth previously, art. 5.2 defines nonrenewal as the "termination of employment effective upon the expiration of the individual contract for unsatisfactory performance." Article 19.2, in turn, provides that discharges and nonrenewals are, at "the teacher's option . . . subject to review through the Grievance Procedure." Article 4.1 provides that if differences arise regarding the meaning, interpretation, and application the agreement's provisions, the parties must make an earnest effort to settle the differences through the grievance process, a process that includes binding arbitration. Article 19.2c was set forth previously in note 4.

"Steelworkers Trilogy,"[7] the United States Supreme Court set forth four general principles regarding arbitrability of disputes. *AT&T Techs. v. Communications Workers*, 475 U.S. 643, 648–52 (1986); *see also Jefferson*, 78 Wis. 2d at 111–12, 253 N.W.2d at 545 (noting that Wisconsin courts have adopted the Trilogy).

First, because arbitration is a matter of contract, a party is not required to submit any dispute to arbitration unless it has agreed to do so. *AT&T*, 475 U.S. at 648; *see also Jefferson*, 78 Wis. 2d at 101, 253 N.W.2d at 540. Arbitrators derive their authority only from the parties' advance agreement that they will submit such grievances to arbitration. *AT&T*, 475 U.S. at 648–49. Second, "[u]nless *the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.*" *Id.* at 649 (collecting cases) (emphasis added); *see also Niro v. Fearn Int'l*, 827 F.2d 173, 175 (7th Cir. 1987). Third, when a court decides whether the parties have agreed to submit a dispute to arbitration, the court cannot rule on the merits of the underlying claim. *AT&T*, 475 U.S. at 649–50. Fourth, if the contract contains an arbitration clause, there is a presumption of arbitrability. *Id.* at 650.

The second principle is applicable to whether the trial court had authority to determine arbitrability. "The arbitrator cannot, except by agreement of the parties, be the judge of the scope of his authority under the contract"; in other words, arbitrators cannot determine whether they have the authority to decide arbitrability

---

[7] *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960).

unless the parties give arbitrators such authority. *Jefferson*, 78 Wis. 2d at 101–02, 253 N.W.2d at 540–41. Further, the evidence of this grant must be "clear and unmistakable." *See AT&T*, 475 U.S. at 649; *see also Miller v. Flume*, 139 F.3d 1130, 1133 (7th Cir. 1998) (quoting *First Options of Chicago v. Kaplan*, 514 U.S. 938, 944 (1995)).

Zdanovec argues, however, that under *Jefferson*, the collective bargaining agreement's "broad" arbitration provision (one specifying disputes as to the agreement's meaning, interpretation, or application) reflects that the parties have expressly or impliedly granted the arbitrator the authority "to determine the scope of their jurisdiction and make a final and binding ruling" regarding arbitrability. Under Zdanovec's reading, the arbitration provision in the collective bargaining agreement gives the arbitrator the authority to settle disputes regarding the definition of a dispute subject to arbitration. We reject this broad reading. In *Jefferson*, the parties entered into two agreements, a collective bargaining agreement and an agreement to submit a grievance to arbitration. *Id.* at 103–04, 253 N.W.2d at 541. The issue in *Jefferson* was what effect the second agreement, the agreement to arbitrate, had on the collective bargaining agreement. *Id.* In its decision, the court made the following observations:

> The collective bargaining agreement is an agreement to submit certain future grievances to arbitration, namely, those relating to discharge and non-renewal. This agreement has a narrow rather than a broad arbitration clause. It does not contain the "standard" provision subjecting to arbitration any dispute as to the meaning, interpretation and application of the agreement. The collective bar-

gaining agreement does not expressly or impliedly give the arbitrators authority to determine the scope of their jurisdiction and make a final and binding ruling on the question of arbitrability. Thus, if only the collective bargaining agreement were before us, the court would determine the issue of substantive arbitrability, that is whether the . . . grievance was arbitrable within the terms of the agreement.

*Id.* at 103–04, 253 N.W.2d at 541 (footnote omitted). In this quoted language, the court simply made observations about the case before it. *Id.* The court did not hold, as Zdanovec suggests, that a broad arbitration clause in a collective bargaining agreement confers authority on the arbitrator to decide arbitrability.

Contrary to Zdanovec's suggestion, Wisconsin courts have rejected such a holding. In *Glendale Prof. Policemen's Ass'n v. City of Glendale,* 83 Wis. 2d 90, 99–100, 264 N.W.2d 594, 599 (1978), the parties had an express agreement to permit the arbitrator to decide arbitrability; the agreement provided that the "arbitrator shall have the *initial* authority to determine whether or not the dispute is arbitrable." *Id.* at 99, 264 N.W.2d at 599. The court ultimately found the grant insufficient because the agreement failed to provide that the arbitrator's decision on the scope of his authority was "final and binding." *Id.* Significantly, however, the court suggested that had the "final and binding" language been included, the grant would have been sufficient. *Id. Glendale* requires specific language granting authority, including that the arbitrator's decision regarding his authority is "final and binding." *See id.* The collective bargaining agreement here contains no such specific grant; it does not clearly and unmistakably grant the arbitrator authority to determine

arbitrability.[8] *See id.* Therefore, the trial court had the authority to determine arbitrability.

Zdanovec next argues that under *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 403–04 (1967), and *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*, 460 U.S. 1, 24–25 (1983), the trial court had no authority to determine if there was fraud in the inducement of the settlement agreement. Because both cases are distinguishable, we disagree. The collective bargaining agreement's arbitration clause in *Prima Paint* provided, in pertinent part, that "[a]ny controversy or claim arising out of or relating to this Agreement, or breach thereof, shall be settled by arbitration." *Id.* at 398. The Court held that when a collective bargaining agreement contains a broad arbitration clause, claims of fraud in the inducement of the arbitration clause itself are submitted to the court. *Id.* at 403–04. By contrast, claims of fraud in the inducement in the contract generally (one containing an arbitration clause) are subject to arbitration. *See id.*

In this case, the grievance procedure, which ultimately provides for arbitration, states that "[s]hould differences arise . . . concerning the meaning, interpretation, and application of the provisions of this Agreement," the parties must make a earnest effort to settle such differences through the grievance procedure's six levels. The language of the grievance

---

[8] Further, in *Milwaukee Police Ass'n v. City of Milwaukee*, 92 Wis. 2d 145, 151, 285 N.W.2d 119, 121 (1979), the supreme court examined a similar provision stating that "[d]ifferences involving the interpretation, application or enforcement of the provisions of this Agreement . . . shall constitute a grievance." The court noted that the provision did not expressly or impliedly give the arbitrator authority to determine the scope of his authority. *Id.*

procedure in art. 4.1 of the collective bargaining agreement is not broad enough to encompass the claim of fraud in the inducement of the settlement agreement. Unlike the provision in *Prima Paint*, the provision here does not refer to "any controversy or claim arising out of" the collective bargaining agreement and does not indicate the intent of the parties to submit the question of contract formation to the arbitrator, let alone disputes arising under a subsequent and separate settlement agreement. Further, the contract that the *Prima Paint* Court examined for fraud in the inducement itself contained an arbitration clause, and there was "no evidence that the parties intended to withhold that issue from arbitration." *Id.* at 397–98. In our case, the settlement agreement contains no arbitration clause, and as discussed below, there is evidence that the parties intended to withhold the issue from arbitration.

Zdanovec also claims that *Moses H. Cone* confers jurisdiction on the arbitrator. We disagree. The language from *Moses H. Cone* that Zdanovec contends renders authority on the arbitrator is from the Court's discussion of whether "exceptional" circumstances existed to warrant the stay of a federal suit out of deference to parallel state court litigation. 460 U.S. at 24–27. *Moses H. Cone* does not address the applicability of a collective bargaining agreement's arbitration clause to disputes under a separate and distinct settlement agreement without an arbitration clause. *Moses H. Cone* provides no help here. Thus, because the language of the collective bargaining agreement does not cover separate and independent agreements, the trial court had authority to determine whether there was fraud in the inducement of this settlement agreement.

43

## B. Application of the Collective Bargaining Agreement's Arbitration Clause to Disputes under the Settlement Agreement

Wisconsin law has not definitively addressed the effect of a settlement agreement that compromises the rights in a collective bargaining agreement, but federal law provides some guidance. Under federal law, an arbitration clause in a collective bargaining agreement applies to a subsequent contract lacking an arbitration clause when the later contract *supplements* the earlier "umbrella" agreement. *Pitta v. Hotel Ass'n*, 806 F.2d 419, 422–23 (2d Cir. 1986). In contrast, if the later contract is collateral, then the arbitration clause in the collective bargaining agreement does not apply to a dispute arising under the later contract (here the settlement agreement). *Cornell Univ. v. UAW Local 2300*, 942 F.2d 138, 140 (2d Cir. 1991). A collateral instrument may be "parallel or coordinate" to a collective bargaining agreement, but it must be dissimilar and "by definition be a contract set apart" from the collective bargaining agreement. *Id.*

Here, the settlement agreement relates solely to Zdanovec's employment, and her grievance arises under the terms of the settlement agreement, not the collective bargaining agreement. Although parallel or coordinate to the collective bargaining agreement, the settlement agreement is a dissimilar and separate document. It neither makes reference to the collective bargaining agreement nor *supplements* it, but creates a set of obligations particular to Zdanovec alone. Further, the settlement agreement neither explicitly nor implicitly confers authority on the arbitrator to do anything. To the contrary, it provides that the agreement is "final and binding" and expressly waives the right to

44

file any claim, suit, or action concerning her employment.

Zdanovec argues that if the settlement agreement is independent and distinct from the collective bargaining agreement, it can have no impact upon the rights under the collective bargaining agreement, including the right to arbitration. We reject this argument. In short, because the settlement agreement is collateral to the collective bargaining agreement and does not supplement it, the collective bargaining agreement's arbitration clause does not apply to the settlement agreement. *See id.*

## C. Waiver in the Settlement Agreement

Alternatively, even if the settlement agreement supplements the collective bargaining agreement, we conclude that the settlement agreement removes the dispute from arbitration. Zdanovec asserts that questions regarding waiver of collective bargaining agreement provisions or the existence of waiver in a settlement arrangement are matters for arbitrators, not the courts. Additionally, Zdanovec contends that the settlement agreement's waiver did not expressly exclude arbitration, but only expressly excluded the right to challenge the panel members' votes on retention or discharge. As a result, Zdanvec reasons, § 788.02, STATS., required the trial court to stay its proceedings until the grievance was arbitrated.

Turning to § 788.02, STATS., we review the construction of this statute and its application to our facts without deference to the trial court. *See Hake v. Zimmerlee,* 178 Wis. 2d 417, 421, 504 N.W.2d 411, 412 (Ct. App. 1993). The right to arbitration under § 788.02 is not absolute; Wisconsin law allows a party to waive its

45

right to arbitration through conduct or agreement. *Meyer v. Classified Ins. Corp.*, 179 Wis. 2d 386, 395, 507 N.W.2d 149, 153–54 (Ct. App. 1993). In keeping with the right to waive arbitration, a settlement agreement "is an arbitrable subject when the underlying dispute is arbitrable, *except in circumstances where the parties expressly exclude the settlement agreement from being arbitrated.*" *Niro*, 827 F.2d at 175 (emphasis added); *see also Racine*, 176 Wis. 2d at 282, 500 N.W.2d at 382. An order to arbitrate should not be denied unless a court can say with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Racine*, 176 Wis. 2d at 282, 500 N.W.2d at 382 (emphasis omitted). Because the settlement agreement waives Zdanovec's right to arbitration, we can say with positive assurance that the arbitration clause in the collective bargaining agreement does not give Zdanovec a right to arbitrate disputes arising from the settlement agreement. *See id.*

Paragraph five of the settlement agreement provides, in part, as follows:

> Unless there is a unanimous agreement among these three individuals that Mrs. Zdanovec will continue as an employee of the District, she agrees to resign, effective at the end of the 1995–96 school year, and this agreement will be considered as her letter of resignation. The decision of these three individuals is *final and binding. Mrs. Zdanovec agrees not to contest the decision of these three individuals and agrees not to bring any suits, claims or actions against any or all these three individuals or any member of the School Board in their individual and/or official capacities.* In making their decision,

these three individuals will, among other items, review psychological reports relating to Mrs. Zdanovec, Mrs. Zdanovec's completion of the course of study directed by the Superintendent, and Mrs. Zdanovec's job performance subsequent to October 23, 1995. (Emphasis added.)

Significantly, the settlement agreement, which declares that the panel's decision is "final and binding," provides that Zdanovec will not: (1) contest the panel's decision regarding her continued employment; or (2) file any suit, claim or action against the panel members or the board. Further, the agreement provides for her resignation if the vote to retain her was not unanimous. The settlement agreement contains no provision or language creating a mechanism for the parties to contest the outcome here. Zdanovec's agreement not to file "any suit, claims or action" expressly excludes the agreement from being arbitrated, and to provide otherwise would "eviscerate the usefulness of settlements reached in grievance and arbitration settings, by complicating what should be a relatively simple and cheap procedure." *See Niro*, 827 F.2d at 175.

To support their position, Zdanovec cites *Office & Prof. Employees Int'l Union v. Allied Ind. Workers*, 397 F. Supp. 688 (E.D. Wis. 1975), and *United Steelworkers v. Lukens Steel Co.*, 969 F.2d 1468, 1471 (3d Cir. 1992). These cases do not persuade us. In *Office & Prof. Employees*, the plaintiff denied that a settlement agreement was reached, and the defendant did not assert that the agreement explicitly waived arbitration. *Id.* at 692. The court's decision to refer the matter to arbitration turned on these facts. *Id.* By contrast, here there is no dispute that a settlement agreement exists, and the district claims an express waiver of arbitration. In *Lukens*, the court required clear and

unambiguous language expressly excluding the issue from arbitration. *Id.* at 1471. No express exclusion exists if we must assume that an agreement excludes an issue from arbitration. *Id.* at 1476. In this case, however, the waiver is clear and express.

Zdanovec asserts that the "only express waiver [in the settlement agreement] is of a right to challenge the disposition of the three panel members voting on retention or discharge." The remainder of Zdanovec's analysis follows from this erroneous assertion. Zdanovec did not simply waive the right to challenge the panel's vote.[9] Such a statement seriously mischaracterizes the settlement agreement, *which also states* that she "agrees not to bring any suits, claims or actions." This language, and the fact that she voluntarily agreed to resign, clearly expresses the parties' intent that there would be no arbitration. Accordingly, we need not adhere to the presumption of arbitrability. Therefore, we conclude that because the settlement agreement removed the dispute from arbitration, § 788.02, STATS., does not require arbitration.

## D. Misrepresentation and Breach

Zdanovec first argues that the trial court erred by rejecting her rescission argument based on Lightner's alleged material breach of paragraph five of the settlement agreement. As previously stated, paragraph five provides that the panel consider, "among other things," the following in reaching a decision on termination:

---

[9] We stress that Zdanovec and the association signed the settlement agreement. Therefore, the association also waived its right to arbitrate disputes arising from the settlement agreement.

Zdanovec's psychological reports, Zdanovec's completion of the course of study, and Zdanovec's job performance after October 23, 1995. Zdanovec asserts that Lightner "gave no consideration to the criteria set forth in the agreement that was independent from his belief in the truth of the allegations," but that instead, he based his evaluation on Zdanovec's alleged misconduct before the settlement.

In its decision, the trial court listed the facts upon which Zdanovec relies to support the claim of material breach. Lightner testified that the investigation of the allegations led him to form perceptions about Zdanovec's character and fitness to teach. He further testified that these perceptions, together with two psychological evaluations and his work with Zdanovec during her prescribed course of study, influenced his termination vote, but that the actual allegations had no basis for his vote. Zdanovec argued to the trial court that these perceptions were the same thing as the previous allegations, but the trial court did not agree.

On appeal, Zdanovec suggests that, in distinguishing between allegations and perceptions, the trial court engaged in "word play" to reach its result. To support this argument, Zdanovec asserts that the trial court failed to consider a key piece of Lightner's testimony: that Lightner agreed he was "looking for some sort of 100% assurance under the settlement agreement that that conduct [the previous allegations] would never be repeated." Based on this language, Zdanovec argues, the trial court should have found a breach.[10]

---

[10] When Zdanovec's attorney continued questioning Lightner, the following exchange occurred:

Q. So the test for you, under the settlement agreement is: Let's take a look at the allegations, and now let's find if there is anything

We will not disturb a trial court's factual findings unless they are clearly erroneous. *See* § 805.17(2), STATS.; *State v. Smith,* 207 Wis. 2d 258, 266, 558 N.W.2d 379, 383 (1997). When the trial court acts as the finder of fact, it is the ultimate and final arbiter of the credibility of witnesses. *Klein-Dickert Oshkosh, Inc. v. Frontier Mortgage Corp.,* 93 Wis. 2d 660, 663, 287 N.W.2d 742, 743 (1980). When more than one inference can be drawn from the credible evidence, we must accept the inference the trier of fact has drawn. *Id.* A court may grant relief from a valid settlement agreement if the moving party shows a material breach, *see Meas v. Young,* 138 Wis. 2d 89, 96, 405 N.W.2d 697, 700 (Ct. App. 1987), or misrepresentation. *Schauer v. DeNeveu Homeowners Ass'n,* 187 Wis. 2d 32, 37, 522 N.W.2d 246, 248 (Ct. App. 1994).

Contrary to Zdanovec's assertions, the record does not show that the allegations were "the basis" for Lightner's decision to terminate Zdanovec. The district correctly points out that Zdanovec bases her breach argument solely on her belief that Lightner considered the previous allegations in casting his vote. As discussed in more detail below, the trial court believed Lightner's testimony that when he signed the settlement agreement, he no longer intended to seek Zdanovec's termination. The trial court is the ultimate and final arbiter of the credibility of witnesses, and we must accept the trial court's credibility determination. *Klein-Dickert,* 93 Wis. 2d at 663, 287 N.W.2d at 743.

that guarantees 100% that those allegations which we assume to be true will never come up again?

A. *I don't think that I would characterize it that way at all* . . . . (Emphasis added.)

50

Accordingly, breach provides no basis for us to rescind the contract.

Zdanovec argues that Lightner breached paragraph six of the settlement agreement[11] because the basis for his decision was the previous allegations. In sum, Zdanovec's misrepresentation theory is that she relied on Lightner's false assurances that he would not consider the allegations or anything that occurred before execution of the settlement agreement and that, further, she would not have entered into the settlement agreement without the representations. She suggests that Lightner entered the settlement agreement "intending to use his veto to discharge Sue, motivated by his personal fortunes in the federal suit."

While interpretation of this settlement agreement is a question of law we review de novo, *Eder v. Lake Geneva Raceway Inc.*, 187 Wis. 2d 596, 610, 523 N.W.2d 429, 434 (Ct. App. 1994), we must accept the trial court's credibility findings unless clearly erroneous, that is, unless no reasonable finder of fact could have reached the conclusions the trial court reached. *See State v. Smith*, 170 Wis. 2d 701, 714, 490 N.W.2d 40, 46 (Ct. App. 1992). Propositions of law applied to the trial court's factual determinations are applied without deference to the trial court. *See id.*

■

Zdanovec argues negligent and intentional misrepresentation. Three elements are common to all types of misrepresentation:[12] (1) the defendant must make a representation of fact; (2) the representation

---

[11] Paragraph six provides that "[t]his agreement is not to be construed as an admission of any wrongdoing on the part of Mrs. Zdanovec."

[12] These three elements are common to intentional (fraudulent) misrepresentation, negligent misrepresentation, and

must be false; and (3) the plaintiff believed the representation and relied upon it to his or her detriment. *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 25, 288 N.W.2d 95, 99 (1980). Based on its credibility determination, the trial court found no convincing evidence to support Zdanovec's contention that Lightner made misrepresentations in negotiating the settlement agreement. As the trial court noted, Zdanovec supported her claim of misrepresentation with "speculative inferences." Indeed, the trial court characterized this evidence regarding Lightner's motives as "wildly unsupported." Instead, it believed Lightner's testimony that when he signed the settlement agreement, he no longer intended to seek Zdanovec's termination.

Accepting the trial court's credibility determination in this case also means that we must accept the finding that no misrepresentation of fact occurred. Without any misrepresentation of fact, there can be no misrepresentation, unintentional or intentional. *See id.* at 25, 288 N.W.2d at 99. As the trial court explains, we cannot grant Zdanovec relief from the settlement agreement because it appears in hindsight to have been a bad bargain. *Schauer*, 187 Wis. 2d at 37, 522 N.W.2d at 248.

*By the Court.*—Order and judgment affirmed.

strict responsibility for misrepresentation. *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 24–25, 288 N.W.2d 95, 99 (1980).