**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 12, 2019**

**Sheila T. Reiff
Clerk of Court of Appeals**

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2019AP1559**
**2019AP1560**
**2019AP1561**
**STATE OF WISCONSIN**

Cir. Ct. Nos. **2018TP165**
**2018TP166**
**2018TP167**

**IN COURT OF APPEALS
DISTRICT I**

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO C. F.-G., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

E. F.,

      RESPONDENT-APPELLANT.

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO S. G., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

      PETITIONER-RESPONDENT,

  V.

E. F.,

      RESPONDENT-APPELLANT.

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J. G.-F., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

E. F.,

RESPONDENT-APPELLANT.

APPEALS from orders of the circuit court for Milwaukee County: CHRISTOPHER R. FOLEY, Judge. *Affirmed.*

¶1     DUGAN, J.[1]   E.F. appeals the orders terminating the parental rights to her three children, C.F.-G., S.G., and J.G.-F.[2]  E.F. contends that the trial court erroneously exercised its discretion because it failed to consider the best interests

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] Separate cases were filed for each child and E.F. filed a separate notice of appeal in each case.  On September 16, 2019, we issued an order consolidating the appeals.

Although the cases were separate before the trial court, in most instances the parties' papers and court orders in each case were identical, and joint court proceedings were held for the three cases.  For ease of reading, we refer to documents that were filed in the singular, even though actually a particular document was filed in all cases.

of the child factor in deciding to terminate her parental rights to each of her children.[3]

## BACKGROUND

¶2     On March 2, 2017, the Division of Milwaukee Child Protective Services (CPS) removed E.F.'s children, C.F.-G., S.G., and J.G.-F., thirteen, six, and four years of age, respectively, from her care.  The removal was based on significant concerns about the physical environment of the children's home; E.F.'s drug use and mental health; and ongoing domestic violence with E.F.'s boyfriend, M.R.

¶3     An order for temporary physical custody of the children was entered on March 6, 2017, based on findings of neglect and children in need of protection and services (CHIPS).[4]  The placement of the children was "undisclosed" because M.R. had threatened to take the children away from CPS and the police officers, and he had a violent criminal history.

¶4     The trial court found the children to be in need of protection and services on May 3, 2017.  On June 21, 2017, the trial court entered a dispositional

---

[3] Wisconsin has a two-part statutory procedure for the involuntary termination of parental rights. ***Steven V. v. Kelley H.***, 2004 WI 47, ¶24, 271 Wis. 2d 1, 678 N.W.2d 856.  In the grounds phase, the petitioner must prove by clear and convincing evidence that at least one of the twelve grounds enumerated in WIS. STAT. § 48.415 exists.  *See* WIS. STAT. § 48.31(1); ***Steven V.***, 271 Wis. 2d 1, ¶¶24-25.  In the dispositional phase, the court must decide if it is in the child's best interest that the parent's rights be permanently extinguished.  *See* WIS. STAT. § 48.426(2); ***Steven V.***, 271 Wis. 2d 1, ¶27.

[4] The Honorable Jane Carroll initially presided over these cases.  As of August 1, 2018, the Honorable Christopher T. Foley presided over the cases.  Judge Foley issued the decision and orders terminating E.F.'s parental rights to the three children.  We refer to the judges collectively as the trial court.

order setting conditions for return of the children to E.F. and continuing the children's placement outside of E.F.'s home.

¶5     E.F. failed to demonstrate that she satisfied the conditions for return of her children.  For example, she was required to control her drug or alcohol abuse.  Although E.F. completed a sixty-day inpatient treatment program in July 2017, during an August 2017 visit, she appeared to be under the influence of drugs.  E.F. then began drug counseling as a part of individual therapy, but she tested positive for cocaine in March 2018, which was also the last time she had attended therapy.

¶6     E.F. was also required to control her mental health problems; she admitted to having a bipolar disorder, anxiety, and depression.  E.F. underwent a required psychological evaluation and she was diagnosed with bipolar I disorder with anxious distress, stimulant-use disorder, post-traumatic stress disorder, and avoidant personality disorder.  Although the evaluation recommended that E.F. continue in drug treatment, consult with a psychiatrist, and participate in individual therapy using a cognitive behavioral approach, E.F. participated in some therapy as provided by CPS, but she was discharged in April of 2018.

¶7     Another condition was that E.F. attend supervised visits with her children.  However, E.F. struggled to consistently attend visits, even when they were only four hours per week.  During visits, E.F. also had difficulty re-directing the children's negative behaviors such that a visitation supervisor needed to intervene and re-direct the children.  Additionally, C.F.-G. had stepped in to monitor the feeding of the younger children, to re-direct them, and to enforce E.F.'s directions.

4

¶8 E.F. was also to complete domestic abuse counseling, but did not do so. E.F. claimed that she had separated from M.R. and she told the case manager that he was no longer in her life, and that she lived alone. However, E.F. was the victim of two domestic violence incidents that resulted in misdemeanor and felony charges against M.R.; one incident occurred in July 2018, and the other occurred in April 2019.

¶9 On July 19, 2018, the State filed a petition to terminate the parental rights of E.F. and G.G., the father, to C.F.-G., S.G., and J.G.-F. As to E.F., the petition alleged the grounds of CHIPS and failure to assume parental responsibility.[5] On February 25, 2019, following a hearing during which prove-up testimony was presented by the children's case manager, the trial court accepted E.F.'s no-contest plea to the CHIPS ground and found E.F. unfit to be a parent.

¶10 On April 30, 2019, the trial court held a dispositional phase hearing and heard testimony concerning the best interests of the children. It issued a written letter decision terminating the parental rights of E.F. to the children on May 1, 2019. Orders for the termination of E.F's parental rights to each child were filed on May 2, 2019.

¶11 This appeal followed.

---

[5] G.G. did not appear to contest the petition and his parental rights were terminated. This appeal does not involve any issues regarding the termination of G.G.'s parental rights.

## DISCUSSION

¶12 E.F. argues that the trial court failed to consider the best interests of the child factor in deciding to terminate her parental rights to each of her children and, therefore, it erroneously exercised its discretion.

### I. Applicable law and the standard of review

¶13 At the dispositional phase of a termination of parental rights proceeding, the trial court must determine whether it is in the child's best interests to terminate parental rights. *See* WIS. STAT. § 48.426(2); ***Steven V. v. Kelley H.***, 2004 WI 47, ¶27, 271 Wis. 2d 1, 678 N.W.2d 856. At a minimum, six factors set forth in WIS. STAT. § 48.426(3) must be considered by the trial court in deciding what is in the child's best interests. *See* ***Steven V.***, 271 Wis. 2d 1, ¶27.

¶14 Ultimately, the decision whether or not to terminate parental rights is a matter within the trial court's discretion. ***State v. Margaret H.***, 2000 WI 42, ¶27, 234 Wis. 2d 606, 610 N.W.2d 475. We will uphold the trial court's decision to terminate parental rights "if there is a proper exercise of discretion." *See* ***id.***, ¶32. A trial court "properly exercises its discretion when it examines the relevant facts, applies a proper standard of law, and using a demonstrated rational process reaches a conclusion that a reasonable judge could reach." ***Dane Cty. DHS v. Mable K.***, 2013 WI 28, ¶39, 346 Wis. 2d 396, 828 N.W.2d 198. The trial court is "the ultimate and final arbiter of the credibility of witnesses," and we must accept the trial court's credibility determination. *See* ***Kimberly Area Sch. Dist. v. Zdanovec***, 222 Wis. 2d 27, 50, 586 N.W.2d 41 (Ct. App. 1998). We will not set aside the trial court's underlying factual findings unless they are clearly erroneous. *See* WIS. STAT. § 805.17(2).

¶15   In the trial court's decision making process, "the best interests of the child[ren] is the paramount consideration[.]" ***Margaret H.***, 234 Wis. 2d 606, ¶33. To establish this, the trial court should reference the factors set forth in WIS. STAT. § 48.426(3), and any other factors it relied upon in explaining, on the record, the basis for the disposition. ***Sheboygan Cty. DHHS v. Julie A.B.***, 2002 WI 95, ¶30, 255 Wis. 2d 170, 648 N.W.2d 402. The factors set forth in § 48.426(3) include:

> (a) The likelihood of the child's adoption after termination.
>
> (b) The age and health of the child, both at the time of the disposition and, if applicable, at the time the child was removed from the home.
>
> (c) Whether the child has substantial relationships with the parent or other family members, and whether it would be harmful to the child to sever these relationships.
>
> (d) The wishes of the child.
>
> (e) The duration of the separation of the parent from the child.
>
> (f) Whether the child will be able to enter into a more stable and permanent family relationship as a result of the termination, taking into account the conditions of the child's current placement, the likelihood of future placements and the results of prior placements.

**II.   The trial court properly exercised its discretion when it determined that termination of E.F.'s parental rights was in the best interest of C.F.-G., S.G., and J.G.-F.**

¶16   E.F. neither disputes the trial court's factual findings nor does she argue that the trial court did not discuss the six required statutory factors. Rather, she argues that the trial court failed to consider the best interest of each of her children when it decided to terminate her parental rights.

¶17 The State argues that E.F. simply asserts that, since the trial court did not use the "magic words, 'best interests'" in its written decision, the decision must be overturned. The State argues that E.F. has not met the high standard of proof for overturning a discretionary decision. The guardian *ad litem* asserts that the trial court's decision is consistent with the mandates of WIS. STAT. § 48.426 and with the case law.[6]

¶18 We conclude that, in focusing on the missing phrase, "best interest of the child", E.F. has missed the reality that the trial court's decision analyzes the six statutory factors required to determine the best interest of a child and the decision is thoroughly infused with articulated concern for the best interest of each of E.F.'s children.

¶19 In particular, we note the following statement of the trial court:

> It is of little comfort to [E.F.], but I sincerely wish she were able to safely parent [C.F.-G., S.G.,] and [J.G.-F.]. However, for a variety of reasons—some of her own making—others not—she cannot. The children are deserving of a safe, nurturing, protective environment, affording them the best (and only chance) to develop into emotionally and physically healthy, productive adults.

The trial court reiterated its concerns for the best interests of the children when it stated, "I wish [E.F.] could safely parent these children; she desperately wishes the same. She and I know she can't. They need to be adopted."

---

[6] We note that E.F. filed a statement indicating that she did not intend to file a reply brief. We could hold that by failing to refute the State and the guardian *ad litem*'s briefs, E.F. has conceded that their arguments are correct. *See* **United Co-op. v. Frontier FS Co-op.**, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (stating that the failure to refute a proposition asserted in a response brief may be taken as a concession). However, to be complete, we address E.F.'s argument.

8

¶20    While helpful to a reviewing court, the statutory language in the "best interest of the child" is not talismanic. We look to the substance of the decision. Furthermore, as we will explain, the trial court's discussion of each factor also reflects that its focus throughout the decision making process was on the best interests of each of E.F.'s children.

### *Evidence Concerning the Best Interests of the Children*

#### *The likelihood of adoption*

¶21    The trial court stated that S.G. and J.G.-F., the two younger children, were "nearly certain" to be adopted, noting that their foster mother was ready, willing, and able to adopt them. The trial court also noted that the foster mother was not dissuaded from adopting S.G. and J.G.-F. by the behavioral challenges they had presented and that, with her loving nurturance and personal and professional support they were receiving while in her care, those challenges had been sustainably ameliorated.

¶22    With respect to the eldest child, C.F.-G., the trial court noted that she did not have a confirmed adoptive resource. However, it noted that C.F.-G. was a bright and caring young lady with a family that was presently expressing sincere interest in placement and, potentially, adoption. It also noted that C.F.-G.'s court appointed special advocate clearly indicated that the interested family was better suited to meet C.F.-G.'s needs than her current placement and to assure she

reached her remarkable potential.[7] Additionally, the trial court noted that, even if that potential adoptive resource did not work out, there was a significant likelihood that another resource would surface.

*The ages and health of the children*

¶23 The trial court also acknowledged that, due to their ages, the children had relationships with their mother. However, those relationships would not impede the permanence of adoption because the children recognized that E.F. had not made choices that kept them and her safe, and they "intensely" feared re-experiencing the traumas they had experienced while in E.F.'s care. The trial court also mentioned that the children had a therapist.[8]

*Substantial relationships with the parent or other family members and harm from severance*

¶24 The trial court noted that the children spent a substantial amount of time in the care of their mother E.F. prior to their removal from her home. The trial court noted that, conservatively stated, E.F.'s housing history was "concerning" and had significantly compromised the health of the children in the

---

[7] In any proceeding involving a child in need of protective services, a court may appoint a special advocate who may gather information and make observations about the child for whom the designation is made, the child's family, or other people residing in the same home as the child, and report such information to the court; maintain regular contact with the child and monitor the safety of the child's environment; and promote the best interests of the child. *See* WIS. STAT. § 48.236(3).

[8] C.F.-G. was reported to have been sexually abused by her father when she was ten years old, had anxiety, and she was enrolled in therapy on a weekly basis to process her trauma. S.G. exhibited some depression and anxiety symptoms, and had done individual therapy to treat her trauma.

past. The trial court also noted that E.F.'s mother had negatively affected E.F.'s day to day ability to parent and function.

¶25    In addition, M.R., the "gun toting, drug dealing, abusive boyfriend" of E.F., presented an imminent and significant threat to the children and established that the children could not be safely reunified with E.F.  The trial court was concerned that, although E.F. indicated to the trial court that she had ended her relationship with M.R. more than a year earlier and that domestic violence incidents in July 2018 and April 2019 were occasioned by coincidental encounters, all the credible evidence suggested the contrary—that E.F. continued to cohabitate with M.R., despite his abusive and violent tendencies.  Thus, the trial court recognized that the substantiality of the children's relationship with E.F. was significantly compromised by her history of not keeping herself and them safe.

¶26    The trial court also noted that C.F.-G.'s parentification[9] issues implicated her relationship with her mother and her siblings.[10]  The trial court was "mortified" by the fact that C.F.-G. was not and could not be placed with her siblings due to that issue.  However, the trial court directed CPS to assure ongoing sibling contact, in consultation with the children's therapist.

---

[9] Parentification is the assumption of a parentlike (or adult) role by a child.  *See* Parentification, MILLER-KEANE ENCYCLOPEDIA AND DICTIONARY OF MEDICINE, NURSING, AND ALLIED HEALTH (7th ed. 2003)

[10] The record indicates that C.F.-G. wants a relationship with her siblings S.G. and J.G.-F.  However, in December of 2018, she spent some time with her siblings at their foster home.  After that visit, S.G. had trouble sleeping and cried for four weeks.  C.F.-G. also tried to parent over the foster mother.

*The wishes of the children*

¶27    The trial court found that all three children's primary wish is to be safe—themselves and their mother. Their loyalties were torn, making a reliable assessment of their wishes difficult at best. However, the trial court also found that it was clear they intensely feared re-experiencing the violence and neglect they previously experienced.

*The duration of separation of the parent*

¶28    The trial court indicated that the children were removed from E.F.'s care on March 2, 2017, and they had remained separated from her since that time. The trial court noted that the separation from March 2, 2017 to May 1, 2019 was a long time in the minds of the children.

*The ability of the child to enter a more stable relationship if parental rights were terminated*

¶29    The trial court found that this factor was the controlling one in this case. As noted previously, the trial court stated, "I wish [E.F.] could safely parent these children; she desperately wishes the same. She and I know she can't. They need to be adopted."

¶30    The trial court also noted that this factor was particularly compelling as to C.F.-G. The trial court stated that "[d]ismissing the petition and continuing [C.F.-G.'s] present foster care placement or returning her to the inherently dangerous circumstances of her mother's life are completely inappropriate alternatives and inconsistent with [C.F.-G.'s] need for safe, loving permanence."

12

¶31 Based on our review of the trial court's findings, its application of the relevant law, and its demonstrated rational process, we conclude that the trial court properly exercised its discretion in deciding that termination of E.F.'s parental rights was in the best interests of each child. *See **Mable K.**, 346 Wis. 2d 396, ¶39. Therefore, we affirm.

## CONCLUSION

¶32 In sum, we conclude that the trial court reasonably exercised its discretion in determining that the termination of E.F.'s parental rights was in the best interests of C.F.-G., S.G., and J.G.-F., *see **Margaret H.**, 234 Wis. 2d 606, ¶¶32-33. Therefore, we affirm the trial court's orders.

*By the Court.*—Orders affirmed.

This opinion will not be published. WIS. STAT. RULE 809.23(1)(b)(4).